**UNITED STATES of America, Appellee,**

v.

**Anne C. VOSS, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Thomas E. LOWE, Appellant.**

**Nos. 84–2417, 84–2421.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1985.

Decided March 26, 1986.

Rehearing Denied April 25, 1986 in No. 84–2421.

As Amended on Denial of Rehearing

En Banc May 29, 1986 in No. 84–2417.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Anne C. Voss and Thomas E. Lowe separately appeal after a jury trial from convictions of attempted arson, in violation of 18 U.S.C. § 844(i) (1982), and four associated counts of mail fraud in violation of 18 U.S.C. § 1341 (1982). In addition, Voss appeals from a conviction of committing perjury before the grand jury, in violation of 18 U.S.C. § 1623 (1982). Appellants complain principally that the jury instruction on the interstate commerce element of the arson charge was erroneous. The jury was instructed to conclude that the property to be burned, a vacant St. Louis residence, was used in an activity affecting interstate commerce, if it found that the house was owned by Voss Associates, Inc., and that Voss Associates, Inc. had purchased insurance from a carrier doing business in more than one state. We conclude that the facts found by the jury do not form a sufficient basis to meet even the *de minimus* standard for showing that the building was used in an activity affecting interstate commerce. We therefore must reverse the arson convictions. However, we also conclude that the challenges to the mail fraud and perjury counts are without merit and affirm those convictions.

This case grows from an investigation jointly undertaken by the Illinois State Police, Division of Criminal Investigation (DCI), and the Federal Bureau of Alcohol, Tobacco, and Firearms, into arson activity in the St. Louis metropolitan area. The government's evidence consisted largely of testimony of agents participating in the investigation and from conversations secretly tape-recorded between one of the agents, working undercover, and the appellants.

Through an informant, a DCI undercover agent, posing as an arsonist-for-hire and wearing a tape recorder, was introduced to Thomas Lowe. Lowe agreed, for a fee, to contact property owners interested in pur-

Robert M. Paskal and Ronald Wessell, St. Louis, Mo., for appellant.

Debra E. Herzog, Asst. U.S. Atty., St. Louis, Mo., for appellee.

chasing the agent's proffered services. Among those brought to the agent by Lowe was Anne Voss, owner of Voss Associates, Inc., a real estate business.

On March 10, 1983, Voss met with the undercover agent at Lowe's office and agreed to pay him $500 to set fire to a vacant residential property she owned, at 1207 Tyler, in St. Louis. Immediately after the meeting she paid him a $100 deposit. Two days later, Voss met with an insurance agent, referred to her by Lowe, to obtain fire insurance on the 1207 Tyler property. On the insurance application, which she signed on behalf of Voss Associates, Inc., and which she returned by mail, she stated that the property was "being rehabilitated." Appellee's Exhibit No. 4. Voss succeeded in insuring the property for $15,000.

In subsequent conversations, many of which were recorded, Voss and the DCI agent, with Lowe often serving as intermediary, planned the arson. Voss gave the agent directions to the property and told him to litter the property with wine bottles to "make it look like a couple of winos were sleeping in [the house] * * * a few wine bottles and a little fire and that's it * * * then the police don't ask any more questions." Tr. II, 122. In early May, 1983, shortly before the arson was to take place, Voss and Lowe were arrested.

Appellants were convicted of attempted arson and four associated counts of mail fraud. Voss also was convicted of perjury before the grand jury. Voss was sentenced to four years imprisonment on the arson and each of the mail fraud counts, to run concurrently, and to three years probation and a $5,000 fine on the perjury conviction. Lowe received a five year sentence on the arson count to run concurrently with the four year sentences on each of the mail fraud counts. This appeal followed.

## I.

18 U.S.C. § 844(i) (1982) provides for punishment of anyone who

maliciously damages or destroys or attempts to destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate commerce or any activity affecting interstate or foreign commerce * * *.

As with most federal criminal statutes, section 844(i) requires that the acts proscribed have some connection to interstate commerce. Specifically, the jurisdictional element of section 844(i) is satisfied if the property to be burned is used in an activity affecting interstate commerce. Voss and Lowe claim that the district court improperly instructed the jury on this element. Thus, they charge, their convictions must be reversed.

The district court instructed the jury, over appellants' objection, to conclude that the 1207 Tyler property was used in an activity affecting interstate commerce if it found: first, that the property was owned by Voss Associates, Inc.; and second, that Voss Associates, Inc. had purchased insurance from a carrier doing business outside the State of Missouri.[1] Appellants challenge the instruction on two grounds. They contend that the instruction was improper because it requires a nexus only between interstate commerce and the owner of the building, not the building itself—it does not ask whether the insurance was purchased for the 1207 Tyler property—as is required by the statute. They also argue, in the alternative, that ownership by a business of a vacant, residential property, insured by a carrier doing business out of state, without more, is not legally sufficient to support the conclusion that the property was used in an activity affecting interstate commerce. Since an element of the section 844(i) offense, in this case the

---

1. The district court instructed the jury:
 If you find beyond a reasonable doubt that the building at 1207 Tyler, St. Louis, Missouri, was owned by Voss Associates Incorporated and further find that Voss Associates Incorporated purchased insurance from an insurance carrier doing business in a state other than the State of Missouri, then you are instructed that as a matter of law that the building at 1207 Tyler was used in an activity affecting interstate commerce.
 Tr. VI, 97.

element which confers federal jurisdiction, was not satisfied, the arson convictions, defendants conclude, must be reversed.

 The commerce clause authorizes Congress to punish any criminal activity bearing even a *de minimus* relation to interstate commerce. *United States v. Perez,* 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971). Congress intended, in enacting section 844(i), to exercise its fullest, constitutionally permissible jurisdictional reach over persons attempting to commit arson to property affecting interstate commerce. *Russell v. United States,* — U.S. —, 105 S.Ct. 2455, 2456 & n. 4, 85 L.Ed.2d 829 (1985). Therefore, section 844(i) reaches attempted arson of any property used in an activity having even a *de minimus* connection to interstate commerce. *See, e.g., United States v. Hansen,* 755 F.2d 629, 630–31 (8th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 105, 88 L.Ed.2d (1985).

 Admittedly, the *de minimus* standard is easily met. *See e.g., Katzenbach v. McClung,* 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964). Still, it is not always met. *See, e.g., United States v. Mennuti,* 639 F.2d 107 (2d Cir.1981). In support of the conclusion that the attempted arson has some connection to interstate commerce, the jury found that Voss Associates owned the building and purchased insurance from an interstate carrier. The connection here suggested is that property owned by a business insured by an interstate insurer is property "used" in an activity affecting interstate commerce. We believe that the *de minimus* standard—and the important federal-state balance it guards—if it be any standard at all, would be starved of content if sustained only by the thin jury findings in this case. Showing that a corporate property owner purchased insurance from a carrier doing business in more than one state, without showing more, is inadequate as a matter of law to demonstrate sufficient effect on interstate commerce to satisfy the *de minimus* standard.

This approach is not inconsistent with the decisions of other courts of appeals. The government argues that in *United States v. Grossman,* 608 F.2d 534 (4th Cir.1979), a section 844(i) case, federal jurisdiction was predicated upon the defendant's purchase of insurance from an out-of-state carrier. *Grossman* involved a backhoe which had been manufactured in Iowa, sold and shipped to a Virginia equipment company, and then sold to a North Carolina construction company, the purchase being financed by a national lending institution. Upon the bankruptcy of the construction company, the guarantor of the loan acquired the backhoe, with refinancing by the same lender, and advertised it for sale to "anybody, anywhere" in a Tennessee trade newspaper. Thus it is plain that in *Grossman,* many factors in addition to insurance combined to create the interstate effect. Similarly, in *United States v. Barton,* 647 F.2d 224 (2d Cir.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981), the court stated: "We are inclined to believe that the mere fact that a building is insured by an interstate carrier does not meet even the *de minimus* standard," under section 844(i). *Id.* at 232. There too, however, the court discovered "undisputed evidence as to alternative jurisdictional predicates," such as the sale of food and beverage, and the consumption of heating fuel, all originating outside the state, upon which to sanction the imposition of federal authority. *Id.* at 232–33. *See also United States v. Belcher,* 577 F.Supp. 1241, 1245 (E.D.Va.1983) (concluding that insurance was insufficient to confer federal jurisdiction, but finding other contacts to suffice).

In the present case only two facts were found, and they alone are not enough. We therefore conclude that because the jury instruction did not embody the adequate legal standard for an effect on interstate commerce, the findings sufficient to support the conclusion that the 1207 Tyler property was used in an activity affecting interstate commerce were not required.

We approach reversal on this count reluctantly. Certainly we believe the record contains sufficient evidence for the jury to have found facts properly supporting the

interstate commerce element. Last Term, in *Russell v. United States,* — U.S. —, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985), the Supreme Court considered whether a two-unit residence, both of which units were rented, was for purposes of section 844(i) a building used in an activity affecting interstate commerce. The Court unanimously concluded: "The rental of real estate is unquestionably such an activity. We * * * recognize that the local rental of an apartment unit is merely an element of a much broader commercial market in rental properties." *Id.* 105 S.Ct. at 2457–58 (footnote omitted). Following the logic of *Russell,* we must similarly recognize the breadth of the commercial market for properties undergoing rehabilitation with an eye toward resale.[2] And that was precisely Voss' business and the purpose to which she ostensibly put the 1207 Tyler property.

■ The testimony that Voss was in the real estate business was uncontradicted. Voss testified that she was a licensed real estate broker in the State of Missouri. She also testified that she owned Voss Associates and actively operated it on a daily basis. She signed the application for insurance as Secretary-Treasurer of Voss Associates. There also was evidence that Voss Associates was involved in real estate rehabilitation and resale. Voss testified that she was recognized by HUD as a development consultant on major HUD projects. She described her purchase of another house for rehabilitation and investment purposes. She also referred in her testimony to individuals performing repairs to her property. Finally, the record makes plain that Voss Associates held the 1207 Tyler property for this purpose. On the fire insurance application, Voss stated that the 1207 Tyler property was undergoing rehabilitation. Our independent review of the record thus reveals ample evidence that Voss Associates, Inc., was a real estate

business owned and operated by the appellant, which had acquired the 1207 Tyler property for the purpose of rehabilitation and resale. We therefore believe that the record contains the facts sufficient to show under the *Russell* standard that the 1207 Tyler property was used in an activity affecting interstate commerce.

■ Nevertheless, it is not for us to find the facts. The Constitution forbids conviction absent proof beyond a reasonable doubt of every fact necessary to constitute the crime. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). If the sixth amendment right to have a jury decide guilt and innocence means anything, *see Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), it means that the facts essential to conviction must be proven beyond the jury's reasonable doubt, not beyond ours. *Connecticut v. Johnson,* 460 U.S. 73, 86, 103 S.Ct. 969, 977, 74 L.Ed.2d 823 (1983) (plurality opinion); *see also Glenn v. Dallman,* 686 F.2d 418, 421 (6th Cir.1982). A jury verdict, if based on an instruction that allows it to convict without properly finding the facts supporting each element of the crime, is error. *See Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Such error is not corrected merely because an appellate court, upon review, is satisfied that the jury would have found the essential facts had it been properly instructed. *United States v. Ben M. Hogan, Inc.,* 769 F.2d 1293, 1298 (8th Cir. 1985), *petition for cert. filed,* 54 U.S.L.W. 3518 (U.S. Dec. 19, 1985) (No. 85–1067); *United States v. Howard,* 506 F.2d 1131, 1134 (2d Cir.1974). The error cannot be treated as harmless. *Connecticut v. Johnson,* 460 U.S. at 87–88, 103 S.Ct. at 977–78; *see also Chapman v. California,* 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, & n. 8, 17 L.Ed.2d 705 (1967).[3]

---

**2.** In *United States v. Hansen,* 755 F.2d at 631, we pointedly declined to embrace the sweeping view taken by the Seventh Circuit in the *Russell* case, 738 F.2d 825 (7th Cir.1984), a view later endorsed by the Supreme Court. Now, of course, the standard of *Russell,* broad as it is, governs our review.

**3.** Recently, in *Cabana v. Bullock,* — U.S. —, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), the Supreme Court considered whether a state appellate court, in proportionality review of a felony

In the face of challenge to an interstate commerce instruction, we have taken this view before. In *United States v. Ben M. Hogan Co., Inc.*, 769 F.2d 1293, a prosecution under the Sherman Act, an instruction improperly including a conclusive presumption prevented the jury from finding the facts to decide whether the interstate commerce element had been satisfied. We reversed the conviction, despite our recognition that "in the record before us there appears to be ample evidence from which the jury could have found—and perhaps did find—that the element was proved." *Id.* at 1298. Similarly, in *United States v. Hiscott*, 586 F.2d 1271 (8th Cir.1978), the jury was instructed incorrectly on the interstate commerce element in a vehicle theft prosecution under the Dyer Act. The trial court had instructed that the vehicle in question must have been disposed of " 'after it had been moved in interstate commerce,' " rather than "while it was still 'a part of and constituted interstate commerce.' " *Id.* at 1275. We deemed this misstatement of the law " 'grave error.' " *Id.* (citing C. Wright, *Federal Practice and Procedure* § 487). And despite our belief that "the jury might have found that as of the time of the sale the necessary nexus between the vehicle and interstate commerce existed," *id.*, we reversed.[4]

In the present case, we believe there is overwhelming evidence that the 1207 Tyler property was held by a real estate company

murderer's death sentence, is competent to find facts from the record. Under *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), the eighth amendment forbids imposition of the death penalty on a felony murder "who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." *Id.* at 797, 102 S.Ct. at 3376. The Court in *Bullock* agreed with the Fifth Circuit, which had granted the habeas writ, that the jury instruction did not require a finding that the petitioner had committed the act or possessed the intent necessary to impose the death penalty. But the Court continued that examination of the jury instruction "is only the first step." 106 S.Ct. at 696. *Enmund* findings, the Court held, may be made from the record by the state appellate court. *Id.* at 697–98.

The Court, however, carefully distinguished the state appeals court's fact-finding competence in the *Enmund* situation from its competence in review of convictions. *Enmund,* the Court stressed, concerns sentencing and proportionality review. Sentencing decisions, even involving the death penalty, have never been required to be made by the jury. *Id.* Similarly, proportionality determinations are well within the competence of the appellate court. *Id.* In sum, *Enmund* "establishes no new elements of the crime of murder that must be found by the jury." *Id.*

In the present case, of course, we deal not with sentencing, but with interstate commerce, an element of the § 844(i) charge and a constitutional prerequisite to conviction. Therefore, it is plain that whatever imprimatur *Bullock* places on a state appeals court's power to review sentencing decisions does not enhance the federal appellate court's competence to find from the record facts essential to conviction.

**4.** The court in *Hiscott* suggested, however, that despite the flawed instruction, if the jury find-

ing prerequisite to conviction were a logical certainty, affirmance would be appropriate. 586 F.2d at 1275. In two recent cases, neither involving interstate commerce, this tack was taken. In *Redding v. Benson,* 739 F.2d 1360 (8th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1210, 84 L.Ed.2d 352 (1985), the defendant was convicted of attempted theft of property worth over $1,000. The jury never was asked to find that the property was worth over $1,000. However, the property in question was a $12,000 bank account. In denying habeas relief, we commented: "The only element lacking is a finding beyond a reasonable doubt that $12,-000.00 in cash has a value over $1,000.00." *Id.* at 1364. Somewhat more troublesome is *United States v. Moeckly,* 769 F.2d 453 (8th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1947, 90 L.Ed.2d 357 (1986), where we held that "proof of venue may be so clear that the failure to instruct on the issue is not reversible error." *Id.* at 461 (citing *United States v. Netz,* 758 F.2d 1308 (8th Cir.1985) (per curiam) ). Judge Arnold, concurring, agreed that the evidence of venue was overwhelming. "As a practical matter," he conceded, "the chance that this jury could have disbelieved the evidence that one or more overt acts were committed in Minnesota, while still returning a guilty verdict, approaches zero." *Id.* at 466. But he worried that "the verdict of guilty as to the offenses charged does not, as a logical matter, necessarily include a determination that anything was done in Minnesota." *Id.* Like an effect on interstate commerce, proper venue in a criminal case is a constitutional prerequisite to conviction. We therefore are pressed to reconcile *Moeckly* and *Ben M. Hogan.* Nevertheless, *Ben M. Hogan,* like the present case, specifically concerned interstate commerce, an element of the crime. It therefore points clearly and certainly to the result we reach.

for the purpose of rehabilitation and resale, facts sufficient under the *Russell* criteria to conclude that the property was used in an activity affecting interstate commerce. But what we believe the facts to be is irrelevant. The grave error in this case is that the jury never was required to find the necessary nexus between the 1207 Tyler property and interstate commerce. Instead, it was directed to conclude, upon an inadequate factual predicate, that an element of the crime had been proved. This was error. We therefore must reverse the attempted arson convictions under section 844(i).[5]

## II.

Lowe challenges his mail fraud convictions, 18 U.S.C. § 1341 (1982), on two grounds. First, he argues that the evidence produced at trial was not sufficient to prove either that he knowingly participated in a scheme to defraud the insurer or caused the United States mails to be used to execute that scheme. Second, he asserts that the trial judge erroneously failed to instruct the jury that Lowe must have caused the mails to be used and that he must reasonably have foreseen that the mails would be used.

The standards that govern our review of sufficiency challenges are well established. We must evaluate the evidence in its entirety and review it in the light most favorable to the verdict to determine whether a rational factfinder could have found the appellant guilty. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979); *United States v. La-Guardia*, 774 F.2d 317, 319 (8th Cir.1985). All conflicts in the verdict and all reasonable inferences must be resolved in favor of the verdict. *United States v. Resnick*, 745 F.2d 1179, 1185 (8th Cir.1984).

Government testimony established that Lowe introduced the DCI agent to Voss to help her burn the 1207 Tyler property, and that he often acted as broker to their communications. It further established that he called the insurance agent to help Voss buy fire insurance on the 1207 Tyler property. There was testimony and physical evidence that the United States mails were used to process the insurance application. With this evidence, the jury found that Lowe participated in a scheme to defraud in which he could reasonably have foreseen the use of the United States mails. We have carefully reviewed the record, and taking the evidence as a whole, conclude that the jury verdict is supported by sufficient evidence.

With regard to the jury instruction challenge, we note first that Lowe did not raise this objection before the jury retired to deliberate, as is required under Fed.R.Crim.P. 30. Thus, he failed to preserve this objection for full review. Therefore, our review is limited to whether the instructions were "so completely erroneous as to result in a miscarriage of justice." *Kampmeyer v. United States*, 227 F.2d 313, 322 (8th Cir.1955), *cert. denied*, 351 U.S. 904, 76 S.Ct. 706, 100 L.Ed. 1441 (1956); *see also United States v. Martin*, 751 F.2d 258, 261 (8th Cir.1984).

In *United States v. Pereira*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954), the Supreme Court stated that:

> Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or whether such can reasonably be foreseen, even though not actually intended, then he "causes" the mails to be used.

The jury was instructed that Lowe must have "wilfully participated [in the scheme to defraud] with knowledge of its fraudulent nature." Tr. VI, 98. Applying the presumption articulated in *Pereira*, we can-

---

5. Appellants also challenge the sufficiency of the evidence to convict under § 844(i). Lowe raises challenges on the attempt and malice elements and Voss challenges the evidence of intent. These are close issues, but we believe the evidence was just over the line establishing sufficiency. Because we reverse the § 844(i) convictions on jurisdictional grounds, we need not undertake a detailed examination of the evidence on these issues which may differ should the government choose to retry the case.

not conclude that the causation instruction incorrectly stated the law. In addition, contrary to Lowe's assertion, the jury was instructed further that, "it is sufficient if * * * use of the mails by * * * somebody else was reasonably foreseeable." Tr. VI, 98–99. Thus, Lowe's complaints are utterly without merit.

### III.

Voss complains that the district court's refusal to sever her trial from Lowe's precluded her calling Lowe as a witness and thus undermined her fifth amendment right to due process and sixth amendment right to compulsory process. She contends that through Lowe's testimony she could have shown that Lowe, not she, ordered the fire insurance, and that she "had merely signed for it and paid the premiums." Brief of Appellant Voss at 27.

■ Judicial economy suggests that, when the right to a fair trial is not put at risk, persons charged in the same offense should be tried together, especially when proof against them is based upon the same evidence or acts. *United States v. Singer*, 732 F.2d 631, 634 (8th Cir.1984); *United States v. Smith*, 578 F.2d 1227, 1236 (8th Cir.1978). Severance should be granted only upon a showing of real prejudice to an individual's right to a fair trial; this requires more than a showing that a separate trial will enhance the chance of acquittal. *United States v. Nabors*, 762 F.2d 642, 651 (8th Cir.1985); *United States v. Reed*, 658 F.2d 624, 629 (8th Cir.1981), *cert. denied*, 455 U.S. 1002, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982). The defendant must show that she would call the co-defendant at a separate trial, that the co-defendant would testify, and that the testimony would be exculpatory. *United States v. DeLuna*, 763 F.2d 897, 921 (8th Cir.), *cert. denied*, — U.S. ——, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985); *United States v. Starr*, 584 F.2d 235, 239 (8th Cir.1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1019, 59 L.Ed.2d 73 (1979). Moreover, a motion for severance under Fed.R.Crim.P. 14 is addressed to the sound discretion of the trial court. A deni-

al will be reversed only for abuse of discretion. *United States v. Lee*, 743 F.2d 1240, 1248 (8th Cir.1984); *United States v. Yates*, 734 F.2d 368, 369–70 (8th Cir.1984). In showing an abuse of discretion and real prejudice, a defendant shoulders a heavy burden. *United States v. Reed*, 733 F.2d 492, 508 (8th Cir.1984).

■ To meet this burden, Voss asserts simply that had she been able to examine Lowe, she could have shown that Lowe ordered the insurance on the 1207 Tyler property. She made no specific offer of proof. Moreover, at trial, the insurance agent who sold the insurance to Voss testified that Voss, not Lowe, had ordered the insurance from him. Under these circumstances, we cannot conclude that the district court abused its discretion in rejecting Voss' motion for severance.

### IV.

On the opening day of trial, Voss requested a continuance to permit an expert to test the tape recordings for authenticity. Voss claims that the district court's refusal to grant the continuance violated her sixth amendment rights to compulsory process and effective assistance of counsel.

■ In determining whether to grant a continuance, the trial judge must balance the asserted need for the continuance against the hardship of the resulting delay, and should also consider the complexity of the case, the diligence of the party requesting a continuance, and the conduct of the opposing party. *United States v. Coronel-Quintana*, 752 F.2d 1284, 287–88 (8th Cir.), *cert. denied*, — U.S. ——, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985); *United States v. Little*, 567 F.2d 346, 348–49 (8th Cir.1977), *cert. denied*, 435 U.S. 969, 98 S.Ct. 1608, 56 L.Ed.2d 60 (1978). Because this balancing requires intimacy with the parties and particular circumstances of the case, the trial court retains broad discretion to grant a continuance. *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983).

This discretion is reviewable only for abuse. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964); *United States v. Reeves*, 730 F.2d 1189, 1193 (8th Cir.1984).

As the record shows, the district court recognized that challenge to the authenticity of the tapes was critical to Voss' case, and balanced her need against the difficulties that would result from trial delay. In addition, he observed that almost eight months had elapsed from indictment to trial, during which time the government had made the tapes readily available for expert review. The record further shows that Voss' counsel possessed copies of the tapes for over a month and that Voss listened to them at home. We have reviewed the district court's ruling and the underlying record and cannot conclude that the denial of the requested continuance constitutes an abuse of discretion.

### V.

■ During trial, the jurors were furnished with transcripts of the tape recordings, prepared by the government, to help them with parts that were difficult to hear. Voss charges that under our decision in *United States v. McMillan*, 508 F.2d 101 (8th Cir.1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975), it was error to permit the jury's use of the transcripts because no foundation as to their accuracy had been laid.

The rule of *McMillan* seeks to protect against reliance on transcripts which vary from the tape recordings. 508 F.2d at 105–06. Thus, *McMillan* requires that a foundation as to accuracy be laid only if accuracy is an issue. *Id.* at 105. *See also United States v. Kirk*, 534 F.2d 1262, 1276 (8th Cir.), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1174, 51 L.Ed.2d 581 (1976). At trial and at oral argument to this court, Voss proffered generalized assertions of inaccuracy. But the record is barren of a specific objection on accuracy grounds, despite Voss' having had ample time to review both tapes and transcripts before trial. Moreover, the safeguards recommended by *McMillan*

were observed. *Id.* at 105–06. The transcripts were not offered into evidence, but were provided merely to assist the jury while it heard the tape recordings. In addition, the trial court instructed the jury that the transcripts were not evidence, but were provided for guidance only, and that should inconsistencies between tapes and transcripts be perceived, the tapes control. Therefore, we must reject this challenge.

### VI.

■ Voss and Lowe complain that in one instruction, the district court stated that "the Government must prove guilt beyond all *possible* reasonable doubt," Tr. VI–88 (emphasis supplied), rather than beyond *any* reasonable doubt, as is required by the Constitution. *In Re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). This misstatement, they urge, requires reversal of their convictions.

In gauging the effect of a jury charge on the validity of a conviction, we must determine whether the challenged instruction was prejudicial in light of the whole charge. *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *United States v. Hash*, 688 F.2d 49, 52 (8th Cir.1982). Repeatedly throughout the lengthy jury charge, the district court correctly articulated the beyond any reasonable doubt standard. We are convinced that this single slip, in light of the entire charge, did not mislead the jury as to the standard of proof for a conviction. Therefore, we reject appellants' argument.

### VII.

Finally, in a supplemental brief, filed late and overlength, Voss herself repeats arguments better pressed by her counsel, and adds new challenges. We believe that in the face of overwhelming evidence of guilt, her attorney provided capable and thorough counsel, and that her supplemental brief was unnecessary. While we recognize her right to self-representation, *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and appreciate

the gravity of the confinement she faces, we do not believe that where a party has been adequately represented by counsel she retains the right to burden the court with substantial additional briefing. Nevertheless, we have considered her supplemental arguments and conclude that each is wholly without merit.

We reverse the attempted arson convictions under 18 U.S.C. § 844(i) as to both Voss and Lowe and affirm all other counts.[6]

[6] We recognize that because Voss received four year sentences to run concurrently on the arson and each of the mail fraud convictions, our reversal on the arson conviction may have no effect on the duration of her confinement. *See, e.g., Lee v. Lockhart,* 754 F.2d 277, 278 (8th Cir.1985) (discussing scope of concurrent sentence doctrine). Lowe, however, received a five year sentence on the arson conviction in addition to four year sentences on each of the mail fraud counts. Therefore, our reversal of his arson conviction reduces his aggregate sentence from five years to four.