UNITED STATES of America, Appellee,

v.

DAKOTA CHEESE, INC., Appellant.

UNITED STATES of America, Appellee,

v.

James DEE, Appellant.

Nos. 89–5132, 89–5133.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1989.

Decided June 13, 1990.

Rehearing and Rehearing En Banc Denied Aug. 9, 1990.

**336**

Roger J. Magnuson, Minneapolis, Minn., for appellant Dakota Cheese, Inc.

Kevin J. Short, Minneapolis, Minn., for appellant James Dee.

Bonnie P. Ulrich, Sioux Falls, S.D., for appellee.

Before LAY, Chief Judge, McMILLIAN and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Dakota Cheese, Inc. and its president, James Dee (collectively, the appellants), appeal from convictions stemming from appellants' use of calcium caseinate in cheese that they sold to the United States Government. We affirm.

At the conclusion of a two-week trial, a jury found Dakota Cheese guilty on eighteen counts: one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371; four counts of making false statements in violation of 15 U.S.C. § 714m(a); four counts of making false claims in violation of 18 U.S.C. § 287; and nine counts of mail fraud in violation of 18 U.S.C. § 1341. The district court[1] fined Dakota Cheese $200,000 and placed it on unsupervised probation for one year.

James Dee was found guilty on five counts: one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, and four counts of making false statements to the Commodity Credit Corporation (CCC) in violation of 15 U.S.C. § 714m(a). Dee was fined $200,000.

Although appellants have raised a number of issues on appeal, as might be expected following a lengthy trial in which some thirty-two witnesses testified, some in great detail about the cheese-making process in general and the ingredients used therein in particular, we discuss in detail only what we consider the two primary issues presented by the appeal.

1. The Honorable John B. Jones, United States District Judge for the District of South Dakota.

Calcium caseinate is marketed in the United States by New Zealand Milk Products, Inc., which is owned by the dairy farmers of New Zealand through a cooperative structure. The calcium caseinate used by appellants was manufactured in New Zealand Milk Products' Sioux Falls, South Dakota, plant from casein imported from New Zealand.[2] The manufacturing process was described by Bill Twieg, the head of quality assurance and research for New Zealand Milk Products:

> In New Zealand they would start with fresh skim milk and, by use of a lactic starter culture, as you would in cottage cheese, acidify that milk down to PH4.5, which then precipitates the casein protein out of the milk. It's a process just like the cottage cheese process. Then after that is washed, it is dried. So, you wind up with a dry casein which is again just like a dry cottage cheese, except that it is dry and it is insoluble because the PH is low. That then is, after it is dried, is put in bags and shipped over to the U.S. to our plants here. So we would take that dry casein and convert it to caseinate by a process which just involves bringing the PH back up. Remember, I said to make casein you acidify a product until it precipitates out to get it back into solution and to make a calcium caseinate you just bring up the PH back up to neutrality, as it would be in milk, by the use of a neutralizing agent called calcium hydroxide.

Mr. Twieg then described the uses to which calcium caseinate is put:

> [T]here are many uses. The main ones I guess would be hospital diets for recovering patients, nutritional beverages, that kind of thing. Cheese substitutes and imitation cheeses, breakfast bars, these kinds of things. Some pharmaceutical preparations, protein supplements for people who need extra protein to supplement their diets and some health-food products too are made with calcium caseinates.

Indeed, New Zealand's products bulletin for calcium caseinate listed as suggested uses pharmaceutical preparations, meat emulsions, nutrition bars, imitation cheeses, and diet and health foods.

## I.

Dakota Cheese is a cheese production company located in Mitchell, South Dakota. James Dee and his wife, Christine Dee, are the company's majority stockholders. From 1983 to 1985, the majority of appellants' mozzarella cheese production was sold to the United States Department of Agriculture (USDA) under contracts with the CCC, an agency of the USDA. In 1983, Dakota Cheese first started using calcium caseinate in its low moisture, part-skim mozzarella cheese that it sold to the government.

In the fall of 1983, as a result of conversations overheard in the company break room, George Sinkie, an employee of Dakota Cheese, began to question the use of calcium caseinate in the fortification of raw milk used to make cheese. Fortification consists of adding nonfat dry milk and calcium caseinate to raw milk to achieve a greater cheese yield. Sinkie telephoned the South Dakota Department of Agriculture and asked if it was legal to use calcium caseinate in cheese. Basing his response on his reading of the Code of Federal Regulations, Harold Schultz, the Department's director of dairy and egg inspection, told Sinkie that it was illegal unless the cheese was labeled as imitation. Sinkie then informed Clyde Hayen, plant foreman at Dakota Cheese, that he would no longer fortify the cheese with calcium caseinate because Dakota Cheese was not identifying its product as imitation cheese. Hayen told Sinkie that if he would not do so he should take three days off without pay. Not wanting to do something illegal, Sinkie left at the end of the week and never returned to work at Dakota Cheese.

After talking with Sinkie, Schultz asked a state inspector to investigate whether Dakota Cheese was using calcium casei-

---

**2.** Casein was described by one of appellants' witnesses as a foster protein that is one of the chief ingredients of milk. It is suspended in milk in little particles, which when precipitated (or settled out) from milk results in a curd that forms the basis for cottage cheese and other cheeses.

nate. No evidence was found, although Schultz checked with the inspector several times over a period of several months.

After receiving the phone call from Sinkie, Schultz also telephoned Harold Linden, regional director of the Dairy Grading Section of the USDA in Minneapolis, to inform him of the call and to check that Schultz' copy of the applicable Code of Federal Regulations was current. Linden then requested the USDA graders and inspectors to be on the lookout for calcium caseinate when they made their regular visits to Dakota Cheese and to report if they observed or became aware of its use. No such reports were received.

Dee told his employees that the use of calcium caseinate was a trade secret. He also told them that he could be in trouble if its use were known by government officials. Dee directed employees to remove the outer identifying wrapper from the calcium caseinate bags before taking them from the warehouse to the cheese making plant when state or federal inspectors were present. If bags were already at the plant, the employees were to transport the calcium caseinate from the plant back to the warehouse if inspectors were expected. Appellants directed semi-truck loads of the calcium caseinate to be removed from the warehouse before the inspectors arrived.

On one occasion, Dee drove around town looking for the inspector's car while the calcium caseinate was being loaded on a truck to remove it from the warehouse. He told employee Steven Borkowski, "I don't want to get caught with this shit." Dee also told employee Delmar Goldhammer that he didn't want the government to know about the use of calcium caseinate and that he didn't want the calcium caseinate bags "around for evidence." On one occasion, Dee told his employees to "get rid of [the calcium caseinate] as soon as you can. If the USDA inspectors come in the plant today, they could fine * * * the hell out of me, if they seen [sic] it."

Plant foreman Clyde Hayen told employee Charles Reinhart that if Dakota Cheese ever got caught using calcium caseinate they could be fined by the government. Hayen told another employee that they would all probably lose their jobs if they got caught using calcium caseinate.

In September 1985, Mel Steffens, an auditor from the Milk Market Administrator's Office (MMA) of the USDA, conducted an audit of Dakota Cheese. Dakota Cheese had altered copies of its invoices by removing the words "calcium caseinate" in preparation for the MMA audits. In June 1986, after the MMA made repeated requests for invoices of Dakota Cheese's purchases from New Zealand Milk Products, a violation was reported to the USDA, Office of Inspector General, which led to a grand jury investigation and to the indictment.

From September 1984 through August 1985, appellants saved some $695,000 on contracts worth more than $6 million by using calcium caseinate instead of nonfat dry milk.

## II.

Appellants contend that the district court erred in directing a verdict on a critical issue of fact—whether calcium caseinate is permitted under the regulations—by treating the issue as a matter of law. Appellants also argue that Jury Instruction No. 13, which treats this issue as a matter of law, is contrary to the district court's prior indications that the issue would be treated as a question of fact to be determined by the jury.

The right to a jury trial includes the right to have the jury decide all relevant issues of fact. *United States v. White Horse*, 807 F.2d 1426, 1429 (8th Cir. 1986); *United States v. Voss*, 787 F.2d 393, 398 (8th Cir.), *cert. denied*, 479 U.S. 888, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986). *See also* Fed.R.Crim.P. 30. A trial court is prohibited from directing a verdict against a defendant in a criminal trial. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355–56, 51 L.Ed.2d 642 (1977). An instruction that decides a material issue of fact as a matter of law is regarded as a partial instructed verdict of guilt, *Mims v. United States*, 375 F.2d 135, 148 (5th Cir.1967), and is prohibited. *United States v. Hayward*, 420 F.2d 142, 144 (D.C.Cir.1969).

Over appellants' objections, the district court advised the jury in Instruction

No. 13 that "as a matter of law, powdered calcium caseinate was not a permitted ingredient in the making of low moisture, part-skim mozzarella cheese at all times material to this case, under the standards of identity issued by the Food and Drug Administration and contained in the Code of Federal Regulations."

Appellants contend that the court had previously ruled that this issue was factual, citing the court's statement that:

The Court views the matter of what the Food and Drug Regulations or the Department of Agriculture Regulations provide with regard to the makeup of cheese as a factual issue * * *.

Counsel have submitted or suggested in the opening statement that the evidence would show that the use of casein is proper and the Court views this as a factual issue and not a question of the guilt or innocence on the matter of fraud.

Appellants also contend that not only did the court treat the issue as factual, the prosecutor considered the issue to be one of fact when arguing for the admissibility of testimony, as manifested by the prosecutor's statement that:

The factual part of this case is that producing cheese under the FDA standards was a specification, a factual specification, of the contracts between the Government and between Dakota Cheese. And what is in those specifications is factual material that someone from the FDA is particularly able to testify about.

Appellants contend that they formulated their trial strategy in reliance on the references by the court and the prosecution that the issue would be treated as one of fact for the jury. Appellants further assert that virtually all of the witnesses called addressed the issue of whether the contractual terms permitted the use of calcium caseinate.

The government contends, however, that this testimony could be used by the jury to determine whether it was a reasonable interpretation under the regulations that the use of calcium caseinate was permitted. The government points out that the jury was required to find that appellants knew the use of calcium caseinate was not per-

mitted in order to convict them. Instruction No. 13 stated in part:

[E]ach count of the indictment includes the requirement that the *defendants acted knowingly,* that is, that they knew at the times set out in the indictment that the use of powdered calcium caseinate was not permitted by the FDA in the making of low moisture, part-skim mozzarella cheese and that the defendants knew this at the time they certified to the United States Department of Agriculture that the cheese sold to the Commodity Credit Corporation did comply with the requirements of the FDA. (Emphasis added.)

The district court explained at the time the instructions were being settled its reasons for having admitted evidence concerning the regulations:

Ordinarily, the Court would not permit the statutes to be presented to a jury or the Code of Federal Regulations because it is the responsibility of the Court to determine the law and set it forth in the Court's Instructions.

It is the view of the Court that under the issues, as framed by the evidence in this case, the admission of the Code of Federal Regulations as they related to the definition of low fat part skim mozzarella cheese and skim milk were admitted [sic] for the purpose of determining the reasonableness of the belief set forth in the defendants' case that the use of calcium caseinate was permitted under the Code of Federal Regulations.

\*     \*     \*     \*     \*     \*

I don't view exercising this requirement as being a directed verdict on any of the factual issues of the case, as set out by the evidence.

The present case is distinguishable from *United States v. White Horse,* 807 F.2d 1426 (8th Cir.1986). In *White Horse,* we held that the district court erred in instructing the jury as a matter of law that a fact essential to conviction (whether the Indian telephone authority was a tribal organization within the meaning of the statute) had been established by the evidence. Here, the district court did not instruct the jury on an element of the offense charged or on a fact essential to conviction. In-

stead, Instruction No. 13 told the jury that before appellants could be found guilty the government was required to prove beyond a reasonable doubt that appellants knew that the regulations did not permit the use of calcium caseinate in making low fat mozzarella cheese.

We acknowledge the force of appellants' argument that the district court's statements made at the beginning of the trial regarding the law/fact aspect of the regulations led appellants to frame their evidence in a manner that presumed an ultimate resolution by the jury of the question whether the regulations permitted the use of calcium caseinate. Nevertheless, much of the evidence submitted by appellants bore on the reasonableness of their belief—and thus their lack of knowledge to the contrary—that such use was permitted. Although we agree that the district court should have made its initial ruling on this point with the same clarity that it expressed at the instruction conference, we are not convinced that its failure to do so resulted in such fundamental unfairness to appellants that their convictions must be reversed. Especially are we unconvinced that the doctrine of the law of the case doctrine, *see, e.g., Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983), precluded the district court from ruling as it did at the close of the evidence.

### III.

█ Appellants contend that because the evidence established that the specifications can be read to permit the use of calcium caseinate, the district court erred in denying their motions to dismiss and for judgment of acquittal.

The specifications in question provided that:

The cheese shipped to CCC shall be low moisture part-skim mozzarella cheese as defined by Food and Drug Administration, U.S. Department of Health, Education and Welfare in its Definitions and Standards under the Federal Food, Drug and Cosmetics Act, as amended, in effect at time of shipping.

The cheese in question is defined as "the food that is prepared from *milk and other ingredients specified in this section.*" 21

C.F.R. §§ 133.156(a) (emphasis added). The regulations define milk as:

[C]ow's milk, which may be adjusted by * * * adding thereto one or more of the following: Cream, skim milk, concentrated skim milk, nonfat dry milk, and water in a quantity sufficient to reconstitute any concentrated skim milk or nonfat dry milk used.

21 C.F.R. § 133.156(c)(1).

Certain optional ingredients may be used in skim milk, including "concentrated skim milk, nonfat dry milk, or other milk derived ingredients." 21 C.F.R. § 131.143(c)(2). Appellants argue that because calcium caseinate is a milk derived ingredient it may be added as an optional ingredient to skim milk. As indicated above, however, 21 C.F.R. § 133.56(a) provides that mozzarella cheese is to be prepared from "milk and other ingredients specified in this section." The other ingredients listed do not include calcium caseinate. Moreover, there are other milk-derived products, including lactose from whey and whey protein concentrates, that are not permitted to be used under the regulations governing the manufacturing of cheese. In addition, the regulations on food standards in general state that a food does not conform to the definition and standard of identity if it "contains an ingredient for which no provision is made in such definition and standard." 21 C.F.R. § 130.8(a). Thus, we agree with the government that the language of the regulations is clear and that the contract specifications did not permit the use of calcium caseinate. In reaching this conclusion, we have considered the extensive evidence, expert and otherwise, submitted by appellants in support of their position to the contrary. Although much more could be written on this issue, we are satisfied that the district court correctly interpreted the applicable regulations and specifications.

We conclude that the district court correctly ruled that as a matter of law powdered calcium caseinate was not a permitted ingredient in the making of low moisture, part-skim mozzarella cheese under the Food and Drug Administration regula-

tions and the contract specifications. Accordingly, the district court did not err in denying the motions to dismiss and for judgment of acquittal.

Appellants raise a number of other issues that they contend require reversal. After a careful review of the record, however, we find these arguments to be without merit.

The judgment of the district court is affirmed.