927 F.2d 597
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Randy Jay MILLER, Defendant-Appellant.
 No. 89-5646.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 7, 1990.
Decided March 7, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Chief District Judge. (CR-89-109)
 Charles David Whaley, Morchower, Luxton and Whaley, Richmond, Va., argued for appellant; Elizabeth D. Scher, Morchower, Luxton and Whaley, Richmond, Va., on brief.
 Constance H. Frogale, Assistant United States Attorney, Alexandria, Va., for appellee; Henry E. Hudson, United States Attorney, Jeffery K. Gordon, Third-Year Law Student, Alexandria, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before K.K. HALL and MURNAGHAN, Circuit Judges, and NORTON, United States District Judge for the District of South Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Randy Miller appeals his conviction for bombing a building used in an activity affecting commerce in violation of 18 U.S.C. Sec. 844(i). We affirm.
 
 I.
 
 2
 In early 1989, appellant Randy Miller determined to kill Ward Burnette, who was dating Miller's ex-wife. Miller constructed a pipe bomb and attached it to the underside of Burnette's truck. He wired the bomb so that it would explode when the ignition key was turned. The voltage of the car battery proved insufficient to detonate the explosive, however, and it fell off the truck after Burnette drove a short distance.
 
 
 3
 Undeterred by this misadventure, Miller built another pipe bomb. He broke into Burnette's home in Herndon, Virginia, and concealed the device in the bathroom ceiling. He wired it to explode when the light was turned on.
 
 
 4
 Burnette returned home on February 20, 1989. He noticed that the lock on the back door was broken, and he began a room-by-room inspection of the house. When he came to the bathroom, he saw that the door was slightly ajar. He stood outside and reached in to flip the switch. He heard a buzzing sound, and all of the lights flickered. He turned the switch off and then on again. The bomb exploded, destroying the bathroom and seriously damaging other parts of the structure. The wall between Burnette and the bathroom interior saved his life; he escaped with minor injuries.
 
 
 5
 Miller was charged in a four-count indictment in March 1989. Count II, the charge relevant to this appeal, alleged that Miller damaged, by use of an explosive device, a building used in an activity affecting interstate commerce, in violation of 18 U.S.C. Sec. 844(i).[1] On May 5, 1989, the district court heard Miller's motion to dismiss Count II. Miller contended that Burnette's home was not used in an activity affecting commerce. The district court denied the motion because the count was facially valid and "ought not ... be dismissed on [a pretrial] motion which calls into play ... factual issues."
 
 
 6
 On May 22, 1989, Miller was convicted before a jury on all counts. He was sentenced to seventy-eight months on each of Counts I, III, and IV, to run concurrently, and sixty months for Count II, to run consecutively to the other sentences. He was also ordered to make $54,955.75 restitution. He appeals his conviction on Count II.
 
 II.
 18 U.S.C. Sec. 844(i) provides:
 
 7
 Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both....
 
 
 8
 This language is intended to "exercise [Congress'] full power under the Commerce Clause." Russell v. United States, 471 U.S. 858, 859 (1985), aff'g, 738 F.2d 825 (7th Cir.1984). This power is very broad--Congress may punish individual criminal acts that have only a de minimis effect on interstate commerce, so long as the class of prohibited activities, in the aggregate, affects commerce. Perez v. United States, 402 U.S. 146 (1971).
 
 
 9
 The Supreme Court's only tussle with the scope of this statute is Russell. In that case, the Court sustained the conviction because the building the defendant attempted to bomb was rental property treated by its owner as business property for tax purposes. The Court examined the legislative history of the statute, and left open how far it might extend to protect private dwellings:
 
 
 10
 The legislative history indicates that Congress intended to exercise its full power to protect "business property." Moreover, after considering whether the bill as originally introduced would cover bombings of police stations or churches, the bill was revised to eliminate the words "for business purposes" from the description of covered property. Even after that change, however, the final Report on the bill emphasized the "very broad" coverage of "substantially all business property." In the floor debates on the final bill, although it was recognized that the coverage was extremely broad, the Committee Chairman, Representative Celler, expressed the opinion that "the mere bombing of a private home even under this bill would not be covered because of the question whether Congress would have the authority under the Constitution." In sum, the legislative history suggests that Congress at least intended to protect all business property, as well as some additional property that might not fit that description, but perhaps not every private home.
 
 
 11
 471 U.S. at 860-62.
 
 
 12
 The only case in this circuit construing 18 U.S.C. Sec. 844(i) involved the destruction of clearly commercial property. A backhoe that had been manufactured in Iowa, owned by two Virginia companies, shipped to North Carolina, and finally advertised for sale to "anyone, anywhere" in a Tennessee publication, was held to be property used in commerce protected by the federal statute. United States v. Grossman, 608 F.2d 534 (4th Cir.1979).
 
 
 13
 The other circuits are not fully harmonious on the question reserved by Russell --what private homes are covered by the statute? For example, the Seventh Circuit found that use of a business-owned computer for business purposes at a private home, in conjunction with use of a phone at the residence for interstate business calls, was sufficient to bring the home within the statute. However, the court stated that the government "tested the limits" of the Commerce Clause by asserting that the mere use of nails sold in interstate commerce in the house's construction sufficed to place it within congressional reach. United States v. Moran, 845 F.2d 135, 137-38 (7th Cir.1988). In United States v. Voss, 787 F.2d 393 (8th Cir.), cert. denied, 479 U.S. 888 (1986), the Eighth Circuit, in reversing a conviction under Sec. 844(i), held that an owner's purchase of insurance from a carrier that did business in more than one state was not a sufficient nexus to commerce. An even narrower view of the statute's scope was taken by the Second Circuit in United States v. Mennuti, 639 F.2d 107 (2d Cir.1981). In Mennuti, the court held that the government must show some use of the dwelling for conduct of business in order to prosecute someone for bombing it.[2] On the other hand, the same court ruled in United States v. Barton, 647 F.2d 224 (2d Cir.), cert. denied, 454 U.S. 857 (1981), that the use of a home for a gambling club, though the club was illegal, was a use "in commerce."
 
 
 14
 The broadest view we find of the statute's coverage is
 
 
 15
 United States v. Stillwell, 900 F.2d 1104 (7th Cir.), cert.
 
 
 16
 denied, 111 S.Ct. 111 (1990), where the court held that the
 
 
 17
 use of natural gas and electricity that had previously
 
 
 18
 traveled in interstate commerce put a private home within
 
 
 19
 the reach of the statute.
 
 III.
 
 20
 In this case, the government posits two bases for federal jurisdiction. In evaluating them, we keep in mind the general rule of lenity--doubts about the ambit of a criminal statute should generally be resolved in favor of the defendant. Rewis v. United States, 401 U.S. 808 (1971).
 
 
 21
 The government first asserts the rationale endorsed by the Seventh Circuit in Stillwell --Burnette's home used gas and electricity that had moved in interstate commerce. Because we affirm on narrower grounds, we neither endorse nor reject this expansive view of the commerce power.[3]
 
 
 22
 As an alternative to its natural gas consumption theory, the government asserts that Burnette used his home to operate a business. Burnette testified at trial that, out of his home, he sells used auto parts and performs mechanical repairs and body work on automobiles. He has a separate day job as an auto mechanic, and he earns only about six or seven hundred dollars a year from his occasional home-based work. In addition, Burnette used his home phone to conduct his private business, and he posted notices soliciting customers, including one across the Potomac River in Maryland.
 
 
 23
 On the other hand, Burnette's business was "under the table"--he did not report his income from it, and he had no zoning approval or license to operate a business at his home.
 
 
 24
 We have no doubt that a house is covered by 18 U.S.C. Sec. 844(i) if a business was conducted there. Russell, 461 U.S. at 862. Moreover, the business need not be "legitimate," e.g., Barton, 647 F.2d at 232 (illegal gambling).
 
 
 25
 A cottage business earning $600 a year has the required nexus to interstate commerce. Though Burnette's trade individually has a de minimis effect on commerce, in-home businesses as an aggregate substantially affect it. Therefore, 18 U.S.C. Sec. 844(i) reaches the bombing of Burnette's residence. Finally, we find that this nexus is not so tenuous or doubtful as to warrant lenity.
 
 
 26
 The conviction is affirmed.
 
 AFFIRMED
 
 
 [1]
 The other three counts were transporting and receiving an explosive in interstate commerce (18 U.S.C. Sec. 844(d)), use of an explosive during and in relation to a crime of violence (18 U.S.C. Sec. 924(c)(1)), and possession of an unregistered explosive (26 U.S.C. Secs. 5861(d), 5871)
 
 
 [2]
 Mennuti 's business-only scope was certainly called into doubt by the Supreme Court's holding in Russell that Congress intended to exercise its full commerce power in Sec. 844(i)
 
 
 [3]
 We note that, although it approved the "consumption of natural gas" connection to commerce in Stillwell, the Seventh Circuit had specifically declined to so hold on three previous occasions. Russell, 738 F.2d at 827; Moran, 845 F.2d at 138; United States v. Doby, 872 F.2d 779, 780 (7th Cir.1989)