UNITED STATES of America, Appellee,

v.

**Irwin I. GROSSMAN, Appellant.**

UNITED STATES of America, Appellee,

v.

**Otis Randolph YOUNG, Appellant.**

**Nos. 77–2565, 77–2566.**

United States Court of Appeals,
Fourth Circuit.

Argued July 13, 1979.

Decided Oct. 26, 1979.

---

Robert A. Shupack, North Miami Beach, Fla., William S. Rose, Jr., Charlotte, N. C. (Kathryn K. Hatfield, Greensboro, N. C., on brief), for appellants.

Phillip G. Kelley, Asst. U. S. Atty., Charlotte, N. C. (Harold M. Edwards, U. S. Atty., Asheville, N. C., and Wayne C. Alexander, Asst. U. S. Atty., Charlotte, N. C., on brief), for appellee.

Before RUSSELL, Circuit Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

FIELD, Senior Circuit Judge:

Irwin I. Grossman and Otis Randolph Young were charged with conspiracy under 18 U.S.C. § 371 to maliciously damage and destroy by means of an explosive device a Link-Belt LS–4000 hydraulic excavator (backhoe), used in an activity affecting interstate commerce, in violation of 18 U.S.C. § 844(i).[1]

Grossman moved to dismiss the indictment for lack of jurisdiction of the federal district court, alleging that the destroyed backhoe was not being used in interstate commerce.[2] By stipulation and evidence introduced by the Government it was established that the backhoe had been manufactured in Iowa and was sold and shipped to a Virginia equipment company in March, 1971. In October, 1972, the backhoe was acquired by a Virginia construction company which in March of 1974 sold and shipped the backhoe to an individual in North Carolina doing business as Gilliam Construction Company of Greensboro, North Carolina. The latter purchase was financed by ITT Industrial Credit Company, a national lending institution doing business in several states. When Gilliam went into bankruptcy, the backhoe was repossessed by ITT, and in March, 1976, Ernest W. Miller, guarantor of the Gilliam loan, acquired the backhoe and refinanced its purchase with ITT. The backhoe was insured by an insurance company doing business in states other than North Carolina and headquartered in Virginia. Although Miller did not use the backhoe in his business, he held it for sale to "anybody, anywhere," and advertised it for sale in two issues of *Rock and Dirt*, a trade newspaper published in Tennessee. After its destruction in October of 1976, Miller, or his designee, was paid the insurance proceeds to cover the loss of the backhoe. Based on these facts the motion to dismiss was denied by the district court.

---

**1.** 18 U.S.C. § 844(i) provides:

(i) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both; and if personal injury results shall be imprisoned for not more than twenty years or fined not more than $20,000, or both; and if death results shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment as provided in section 34 of this title.

**2.** Appellant Young did not join in the motion to dismiss in the district court, but has raised the jurisdictional point on appeal.

Grossman and Young entered pleas of *nolo contendere* and guilty, respectively, to the one-count indictment of conspiracy. Both pleas were determined to be voluntary and upon a factual basis pursuant to Rule 11 of the Federal Rules of Criminal Procedure and were, accordingly, accepted by the Court. Each defendant was given a probationary sentence and fined.

Upon appeal, the defendants contend that their convictions are void for lack of jurisdiction since the backhoe which they conspired to destroy was not "used in interstate * * * commerce or in any activity affecting interstate * * * commerce" as required by 18 U.S.C. § 844(i). Specifically, they argue that § 844(i) requires a contemporaneous connection with interstate commerce without regard to past interstate movement. In this respect, appellants point out that the backhoe had been in the state of North Carolina continuously for two and one-half years prior to its destruction, and at the time was not being used by Mr. Miller in his business.

What is sufficient to satisfy the commerce requirement of § 844(i) is a question of first impression for us. We are not without guidance, however, for both the Seventh and Tenth Circuits have had occasion to consider the statute's jurisdictional basis. In *United States v. Sweet*, 548 F.2d 198 (7 Cir. 1977), a tavern had been bombed

and burned by the defendants. Lost with the tavern building were stocks of liquor and beer which had originated out of the state but had been purchased from local distributors. The defendants did not challenge the sufficiency of the evidence, but contended that the application of § 844(i) to a local tavern was beyond the power of Congress. Upon a careful review of the authorities and the legislative history,[3] Judge Harlington Wood concluded:

> The punishment in § 844(i) of the unlawful use of explosives in an intrastate activity, but which has an effect on interstate commerce although *de minimis*, is within the power of Congress to enact as an appropriate means to accomplish a legitimate end under the commerce power.

548 F.2d, *supra*, at 202. In *United States v. Schwanke*, 598 F.2d 575 (10 Cir. 1979), a building was destroyed by the use of explosives. One of the tenants of the building operated a restaurant and in the course of business purchased confections and vegetables from outside the state. The defendants contended that the Government had failed to establish jurisdiction for a criminal violation under § 844(i). The court, relying upon *Sweet* and the legislative history of the statute, held that the Government's evidence was sufficient to establish jurisdiction.

\*   \*   \*   \*   \*   \*

> Section 844(i) proscribes the malicious damaging or destroying, by means of an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce. Attempts would also be covered. Since the term affecting [interstate or foreign] "commerce" represents "the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause," *NLRB v. Reliance Fuel Corp.*, 83 S.Ct. 312, 371 U.S. 224, 226, 9 L.Ed. 279 (1963), this is a very broad provision covering substantially all business property. While this provision is broad, the committee believes that there is no question that it is a permissible exercise of Congress authority to regulate and to protect interstate and foreign commerce. (P. 4046)

*United States v. Sweet*, 548 F.2d at 200.

---

**3.** The court discerned the Congressional purpose of § 844(i) in the following excerpts from the legislative history:

House Report No. 91–1549, Organized Crime Control Act of 1970, [1970] U.S. Code Cong. & Ad.News:

> Bombings and the threat of bombings have become an ugly, recurrent incident of life in cities and on campuses throughout our Nation. The absence of any effective State or local controls clearly attest to the urgent need to enact strengthened Federal regulation of explosives.
>
> \*   \*   \*   \*   \*   \*
>
> Its purpose is to protect interstate and foreign commerce against interference and interruption by reducing the hazards to persons and property arising from explosives misuse and unsafe or insecure storage. It is also intended to assist the States effectively to regulate explosives distribution within their borders  .   .   .   (P. 4013)

We are in accord with the conclusion of these circuits that in using the words "affecting interstate commerce" Congress intended to exercise the full jurisdictional reach constitutionally permissible under the Commerce Clause. *See also Scarborough v. United States*, 431 U.S. 563, 571, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977).

With the statutory breadth of § 844(i) in mind, we are of the opinion that the evidence in this case demonstrated a sufficient interstate nexus. As we have noted, the backhoe had been manufactured in Iowa and owned by two companies in Virginia prior to its shipment into North Carolina. It had been financed and insured by companies doing business in states other than North Carolina, and was being held for sale to "anybody, anywhere" and advertised to that effect in a periodical published in the State of Tennessee. Accordingly, we hold that the district court properly exercised jurisdiction and the convictions are affirmed.

AFFIRMED.