**UNITED STATES of America**

v.

**Geane DOBY and Ricky S. Gibson.**

**Crim. No. HCR 87–65.**

United States District Court,
N.D. Indiana,
Hammond Division.

May 3, 1988.

---

**2.** Of course, the issue never would have arisen had the complaint been filed in person rather than by mail.

Gwen Rickenberger, Asst. U.S. Atty., Hammond, Ind., for the U.S.

I. Alexander Woloshansky, Merrillville, Ind., for defendant Gibson.

Joseph VanBokkelen, Highland, Ind., for defendant Doby.

## ORDER

MOODY, District Judge.

This matter is before the court for a determination of whether the facts of this case properly invoke federal subject matter jurisdiction. On May 22, 1987, defendants Geane Doby, Ricky Gibson, and Mohamad Shaker were named in a three-count conspiracy indictment charging them with the crime of arson in violation of 18 U.S.C. § 844(i). Prior to trial, defendant Doby sought to have the indictment dismissed on the ground that the property allegedly destroyed in the arson did not come within the jurisdictional scope of § 844(i). Because the allegations in an indictment are to be accepted as true when challenged by a motion to dismiss, this court denied Doby's pretrial attack of the indictment. *United States v. Doby*, 665 F.Supp. 705, 708–09 (N.D.Ind.1987). When denying Doby's motion, the court specifically stated that if the government failed to substantiate its jurisdictional allegations at trial, the arson counts would be dismissed for lack of subject matter jurisdiction. *Id.* at 709 n. 4.

On November 30, 1987, subsequent to the denial of Doby's motion, defendants Doby and Gibson pleaded guilty to the arson charges,[1] thus obviating the trial. At the change-of-plea hearing, the parties agreed that the defendants'[2] guilty pleas were conditioned upon a subsequent finding by the court that the subject property fell within the jurisdictional boundaries of § 844(i). *See United States v. Moran*, 845 F.2d 135 (7th Cir.1988) (following same procedure for entering conditional guilty pleas to an indictment involving violations of 18 U.S.C. § 844(i)).

### I.

After reviewing the briefs and evidence submitted by the parties, the court finds the following uncontested facts. The subject property was a two-story, two-unit apartment house located in a residential district in Gary, Indiana at 629 Madison Street. Defendant Shaker purchased the two-unit apartment dwelling with the intent of using the second-floor apartment as income-earning rental property while the first-floor apartment was to be used as his own residence. After purchasing the property (sometime in 1977 or 1978), Shaker moved into the first floor and the second floor continued to be inhabited by previous renters; at no time did Shaker or his family reside in the upstairs apartment. Shaker rented the upstairs apartment to five or six different tenants, the last of which was Margarita Santiago. Santiago moved out in November of 1984; after her departure, Shaker made ongoing yet unsuccessful attempts to rent the vacant second floor. Shaker placed a sign reading "Apartment for Rent" in the window and, from November of 1984 to July of 1985, three prospec-

---

1. Defendant Shaker and the government entered into an agreement which resulted in the government dismissing the arson indictment and, in return, Shaker pleaded guilty to a charge of fraud in violation of 18 U.S.C. § 1341.

2. Although the original jurisdictional challenge was raised by Doby alone, defendant Gibson joined in the challenge at the November 30, 1987 change-of-plea hearing.

tive tenants viewed the apartment but none of them actually rented it.

In early May of 1985, Shaker went on a month and a half vacation to visit his family in Israel. While he was away both apartments were burglarized and damaged. Upon his return to Gary in early July, Shaker was unable to move back in to the first floor apartment because of the extensive damage done to the property during the burglary. He attempted to renovate the two apartments but was unsuccessful in raising the money necessary to pay for repairs. It was at this point that Shaker decided to burn the property in order to collect insurance proceeds and enlisted the help of defendants Doby and Gibson.

## II.

Section 884(i) makes it a federal criminal offense to maliciously damage or destroy by means of fire any building or other real or personal property used in interstate commerce or in any activity affecting interstate commerce.[3] The Supreme Court has held that when enacting § 844(i) Congress intended "to exercise its full power under the Commerce Clause." *Russell v. United States*, 471 U.S. 858, 105 S.Ct. 2455, 2456, 85 L.Ed.2d 829 (1985). A jurisdictional determination under § 844(i) involves a two-part analysis: (1) whether the property was "used", and (2), whether such use was in "an activity affecting interstate commerce." *Id.* 105 S.Ct. at 2457 ("[§ 844(i)] only applies to property that is 'used' in an 'activity' that affects commerce"); *see also United States v. Patterson*, 792 F.2d 531, 532 (5th Cir.1986) (citing *Russell*).

The parties here do not dispute that the rental of real estate constitutes an activity affecting interstate commerce for purposes of the arson statute. That there is no disagreement on this point is understandable, for in *Russell* the Court adopted a per se rule that the rental of any property, even a single apartment unit, satisfies the interstate activity requirement of § 844(i).

*Russell,* 105 S.Ct. at 2457–58. In that case, defendant Russell tried to set fire to a two-unit apartment building which he was using as income-earning rental property. *Id.* at 2456. In holding that the local rental of a small apartment building was an activity affecting interstate commerce, the Court reasoned:

> We need not rely on the connection between the market for residential units and "the interstate movement of people," to recognize that the local rental of an apartment unit is merely an element of a much broader commercial market in rental properties. The congressional power to regulate the class of activities that constitute the rental market for real estate includes the power to regulate individual activity within that class.

*Id.* at 2548 (footnotes omitted).

The issue raised by the present defendants is whether Shaker's property was being "used" as rental property at the time of the arson. The defendants attempt to distinguish *Russell* and argue that because Shaker's second-floor had not been rented for over six months and due to the extensive damage done to the apartment during the burglary the building had lost its rental status and thus was not being "used" as rental property at the time of the fire. Not surprisingly, the government disagrees and points to the fact that Shaker advertised the apartment for rent up to the day of the fire and actually showed it to prospective tenants between November of 1984 and early July of 1985.

Although the Supreme Court has not directly discussed how the term "used" restricts the scope of § 844(i), several lower courts have grappled with the issue and their discussions are instructive. The Fifth Circuit, in *United States v. Patterson*, 792 F.2d 531 (1986), found that apartment buildings which were still under construction were being "used" in an interstate

---

**3.** 18 U.S.C. § 844(i) reads, in pertinent part, "Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate ... commerce or in any activity affecting interstate ... commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both."

activity even though they had not been rented out. The *Patterson* court reasoned:

> It is doubtful Congress meant § 844(i) to cover building materials *used* to construct a building and buildings *used*, say, to house tenants and procure rental income (as in *Russell*), but meant to exclude from coverage a partially completed structure. Though, generally, criminal statutes are to be narrowly construed, they are not to be interpreted in a way that makes their coverage irrational. We therefore find that the partially completed condominium units in question there were "used" within the meaning of the statute, in the sense that the damaged property had "some relationship" to an activity alleged to affect interstate commerce.

*Id.* at 534 (emphasis in original). In reaching its decision, the *Patterson* court relied principally upon a Ninth Circuit opinion. *See United States v. Andrini*, 685 F.2d 1094, 1096 (1982) ("construction of a commercial office building using out-of-state materials is a commercial activity affecting interstate commerce for the purpose of § 844(i)").

A Virginia district court, in *United States v. Belcher*, 577 F.Supp. 1241 (E.D. Va.1983), found that destruction (by means of fire) of a restaurant, temporarily closed because of repairs, which received and sold liquor from out of state was sufficiently "used" in interstate activity for purposes of § 844(i). *See also United States v. Shockley*, 741 F.2d 1306, 1307 (11th Cir. 1984) (same facts and citing *Belcher* with approval); *United States v. Grossman*, 608 F.2d 534 (4th Cir.1979).

 The lesson taught by these cases is that property routinely used in interstate-commerce activity does not lose its interstate *use* simply because of a temporary cessation of that activity. The undisputed facts here reveal that the second-floor apartment of Shaker's property was used as income-earning rental property from the date Shaker purchased it in 1977 or 1978 to November of 1984. Although the apartment remained vacant thereafter, Shaker testified (by way of deposition) that he continued to hold it out for rent, that he showed it to at least three prospective tenants, and that he continued to advertise it for rent up to the date of the arson. Moreover, Shaker stated that it was his intent to continue to rent the second-floor after completing the repairs. Based on these facts, the court finds that the Shaker property (like the property in *Patterson, Shockley* and *Belcher*) had a sufficient relationship to an interstate-commerce activity (real estate rental) in order to say it was being "used" in that activity.

### CONCLUSION

The court finds that Shaker's property was covered by 18 U.S.C. § 844(i), thus, federal jurisdiction is present in this case.