UNITED STATES of America, Appellee,

v.

GOODNER BROTHERS AIRCRAFT, IN-CORPORATED; and Albert S. Goodner, Jr., also known as Junior Goodner, Appellants.

No. 91–2466.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1991.

Decided June 4, 1992.

---

James B. Harris, Dallas, Tex., argued (Jerry McCombs, Idabelle, Okl., Danny

Thrailkill, Mena, Ark., and John Wesley Hall, Jr., Little Rock, Ark., on brief), for appellants.

Peter Appel, Dept. of Justice, Washington, D.C. (Herbert Mondros and J. Carol Williams, Dept. of Justice, Washington, D.C., Mark Webb, Asst. U.S. Atty., Fort Smith, Ark., and Patrick Flachs, Asst. U.S. Atty., St. Louis, Mo., on brief), for appellee.

Before LAY,* Chief Judge, WOLLMAN and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Appellants Goodner Brothers Aircraft and Albert S. Goodner, Jr. (Junior Goodner) were charged with criminal violations of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6921 et seq., and the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq. This case has been tried twice. The first trial resulted in a hung jury on nine counts and acquittals on approximately forty other counts. In the second trial on the remaining nine counts, the jury returned a guilty verdict against the appellants on most counts. Appellants appeal from their convictions in the district court. We affirm in part, reverse in part, and remand.

I. Background

Goodner Brothers Aircraft, of which Junior Goodner was the owner and operator, was in the business of repainting aircraft. Paint was removed from the aircraft by spraying undiluted paint removers onto the plane. The paint removers used were PR 3500 and PR 3700, purchased from El Dorado Chemical Company. These solvents consisted of 50% to 70% methylene chloride and a lesser amount of phenol. The paint remover would cause the paint on the plane to bubble up and slide off the plane. Water under high pressure was also applied to the plane to help peel off the paint. Some of the paint remover was absorbed into the removed paint. When the collected paint

---

* The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

waste filled fifteen to twenty barrels, the waste was disposed of at the Goodner Brothers Farm. The waste was placed in three pits at the farm: two natural ravines and one man-made excavation. The evidence indicated that the total amount of waste so deposited was approximately 51,000 pounds or 25 tons.

In 1988, a neighbor noticed "two men dumping creamy beige, toxic-smelling waste into a ravine" on the Goodner Brothers Farm. Junior Goodner assured the neighbor that he knew about the situation and that she should not be concerned. The neighbor reported the dumping to the authorities. The Arkansas Department of Pollution Control and Ecology and later the United States Environmental Protection Agency (EPA) began to investigate. Pursuant to a search warrant, the EPA seized documents at the Goodner Brothers Aircraft facility. The documents included a 1980 letter from the EPA and a 1982 letter from the Arkansas Department of Pollution Control and Ecology, both sent to Goodner Brothers Aircraft warning it of its potential liability for hazardous substances. Also pursuant to the warrant, the EPA took samples of the material coming off the plane and the substance found in the dumpsites. Upon testing, the samples from the dumpsites were found to contain up to 20% phenol and, in several cases, up to 20% methylene chloride.

Goodner Brothers Aircraft was convicted of counts 1 through 4, and Junior Goodner was found not guilty of counts 1 through 5. Counts 1 through 4 charge RCRA violations, the disposal of hazardous waste on certain dates without having obtained a permit pursuant to 42 U.S.C. §§ 6925 and 6926, in violation of 42 U.S.C. § 6928(d)(2)(A). Count 5 is not at issue. Both Goodner Brothers Aircraft and Junior Goodner were convicted of count 9, a RCRA count involving the handling of hazardous waste and failing to file an application for a hazardous waste permit, in violation of 42 U.S.C. § 6928(d)(4). Junior Goodner was convicted of counts 6 through 8 as well. These counts charge CERCLA violations involving the release of hazardous substances into the environment on

certain dates without a permit, in violation of 42 U.S.C. § 9603(b). The district court sentenced Goodner Brothers Aircraft to five years probation, a $150,000 fine, and a $250 special assessment. The district court denied Junior Goodner a reduction adjustment for acceptance of responsibility and sentenced him to fifteen months imprisonment, a $7,500 fine, and a $200 special assessment.

Appellants raise numerous issues regarding the RCRA counts (counts 1 through 4 and 9) and the CERCLA counts (counts 6 through 8). Junior Goodner also challenges the district court's refusal to grant him an offense level reduction at sentencing for acceptance of responsibility.

## II. Discussion

### A. RCRA Counts 1 through 4

Counts 1 through 4, of which Goodner Brothers Aircraft was convicted, involve violations of 42 U.S.C. § 6928(d)(2)(A). This subsection provides criminal penalties for "[a]ny person who ... knowingly treats, stores, or disposes of any hazardous waste identified or listed under this subchapter [RCRA] ... without a permit under this subchapter [RCRA]...." Jury instruction number 9 stated that the third element necessary to prove the RCRA violations charged in counts 1 through 4 was "that the wastes were listed or identified by the Environmental Protection Agency as hazardous waste pursuant to [RCRA]." This instruction was clarified in jury instruction number 11.

### INSTRUCTION NO. 11

### HAZARDOUS WASTE LISTING

You are instructed that the Environmental Protection Agency has listed as hazardous the following wastes:

The spent halogenated solvent, methylene chloride, and all spent solvent mixtures and/or blends containing, before their use, a total of ten percent or more by volume of methylene chloride.

You are further instructed that pursuant to the regulations of the Environ-

mental Protection Agency and the Arkansas Department of Pollution Control and Ecology, when a listed hazardous waste is mixed with a solid, liquid, or semisolid material, the resulting mixture is also a hazardous waste.

■ A jury is presumed to follow the instructions given to it by the court. *Greer v. Miller*, 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987). Under this instruction, the jury could have determined that the waste was hazardous under two alternative grounds. First, the jury could have found that the waste was a listed waste under the quoted language from 40 C.F.R. § 261.31. *See* 42 U.S.C. § 6921(b). This type of listed hazardous waste is referred to as F002 waste. Second, the jury could have found the waste to be "hazardous waste" pursuant to the mixture rule set forth in the last paragraph of the instruction.

The mixture rule was promulgated by the EPA, codified at 40 C.F.R. § 261.-3(a)(2)(iv), and incorporated by reference under the Arkansas regulations, 2 Ark.Admin.Code § 2(5). Recently, the mixture rule was successfully challenged on procedural grounds by other parties in *Shell Oil Company v. Environmental Protection Agency*, 950 F.2d 741 (D.C.Cir.1991). Because the EPA failed to follow the proper notice and comment procedures required under the Administrative Procedures Act, the court vacated the mixture rule. *Id.* at 752.

■ When a jury verdict may be supportable on one ground but also may be based on another ground that is unconstitutional or illegal, and when it is impossible to tell which ground the jury selected, then the verdict must be set aside. *Griffin v. United States*, —— U.S. ——, 112 S.Ct. 466, 474, 116 L.Ed.2d 371 (1991); *Yates v. United States*, 354 U.S. 298, 312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356 (1957). From the jury's general verdict in this case, it is impossible to determine whether the jury found the waste to be a listed F002 waste

or whether it relied upon the invalidated mixture rule.

■ To avoid the reversal of the convictions under counts 1 through 4, the government first argues that the invalidation of the rule does not apply retroactively. A regulation not promulgated pursuant to the proper notice and comment procedures has no "force or effect of law" and therefore is void ab initio. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 313, 99 S.Ct. 1705, 1723, 60 L.Ed.2d 208 (1979). "Yet, when equity demands, an unlawfully promulgated regulation can be left in place while the agency provides the proper procedural remedy." *Fertilizer Inst. v. E.P.A.*, 935 F.2d 1303, 1312 (D.C.Cir.1991) (citations omitted). The *Shell Oil* court "vacated" and "set aside" the mixture rule. 950 F.2d at 752. The government argues, however, that under the same authority the court had to leave the rule in place, it chose to invalidate the rule only prospectively. Based upon the language in *Shell Oil* that the EPA may wish to reenact the mixture rule on an interim basis pending full notice and comment to avoid "*discontinuity* in the regulation of hazardous wastes," the government asserts that the court must have intended only prospective invalidation because discontinuity would not exist if the rule was void ab initio. 950 F.2d at 752 (emphasis added). We reject the government's interpretation because it is inconsistent with the language in *Shell Oil* that specifically pronounces that the rule is "vacated" and "set aside." [1] The District of Columbia Circuit has previously noted in another case that "[t]o 'vacate,' as the parties should well know, means 'to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of no authority or validity; to set aside.'" *Action on Smoking & Health v. C.A.B.*, 713 F.2d 795, 797 (D.C.Cir.1983) (citations omitted). In addition, the language regarding "discontinuity" could easily refer to the practical effect of invalidation of the mixture with respect to the

---

1. Subsequent to filing its opinion, the court summarily denied the government's request to "clarify" that the opinion only voided the mix-

ture rule prospectively. *Shell Oil Co. v. E.P.A.*, No. 80–1532, et al. (D.C.Cir. March 5, 1992) (order denying motion for clarification).

compliance practices of the regulated industries rather than referring to the legal force of the mixture rule.

The government argues that under the test in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the invalidation should only apply prospectively. Retroactive application of the decision in *Shell Oil,* however, is "consistent with the Supreme Court's recent decision in *James B. Beam Distilling Co. v. Georgia,* — U.S. ——, 111 S.Ct. 2439, 2445–46, 115 L.Ed.2d 481 (1991), in which the Court announced that full retroactivity is the normal rule in civil cases and limited the applicability of *Chevron Oil* ['s] ... test for prospectivity." *Bottineau Farmers Elevator v. Woodward–Clyde Consultants,* 963 F.2d 1064, 1074 (8th Cir.1992). Under *James B. Beam Distilling,* full retroactive effect must be given to a new rule of civil law when the new rule is applied to the litigants in the case in which the rule was announced. *Boudreau v. Deloitte, Haskins & Sells,* 942 F.2d 497, 498 n. 1 (8th Cir.1991). The court in *Shell Oil* did not expressly reserve the question of retroactivity or of whether its holding should apply to the parties before it. On the contrary, it declined to reach the substantive arguments of the petitioner regarding the mixture rule because it had vacated the mixture rule. 950 F.2d at 952. If the court had not applied the invalidation of the mixture rule to the parties before it, it would have been required to reach the substantive arguments. Under *James B. Beam Distilling* and consistent with the meaning of the word "vacate," we find that invalidation of the mixture rule applies retroactively.

■ The second argument raised by the government to avoid reversal on counts 1 through 4 is that the Arkansas mixture rule could be relied upon in place of the vacated federal one. Goodner Brothers Aircraft was convicted of a federal statute, 42 U.S.C. § 6928(d)(2)(A), which is defined by federal law. The federal law did not incorporate state law definitions of hazardous waste. *See* 42 U.S.C. §§ 6903(5), 6921(b). We find any reliance on the state mixture rule in this case inappropriate.

Based upon the invalidation of the federal mixture rule, we reverse the district court and remand so that the verdicts on counts 1, 2, 3, and 4 may be set aside and a new trial held. Consequently, we need not address the numerous other issues raised by Goodner Brothers Aircraft with respect to counts 1 through 4.

## B. *RCRA Count 9*

Both Goodner Brothers Aircraft and Junior Goodner were convicted of count 9 involving the handling of hazardous waste and failure to file an application for a hazardous waste permit under RCRA, in violation of 42 U.S.C. § 6928(d)(4). This subsection provides criminal liability for any person who knowingly generates, disposes of, or otherwise handles any hazardous waste and who knowingly fails to file "any · record, application, manifest, report, or other document required to be maintained or filed" under RCRA. 42 U.S.C. § 6928(d)(4).

Jury instruction number 20 properly includes as the third element that "the wastes were listed or identified by the Environmental Protection Agency as a hazardous waste pursuant to [RCRA]." No separate definition of hazardous waste was given for this count. Because the third element in this RCRA count is identical to that given for RCRA counts 1 through 4, the definition for all of the counts presumably is the one given in jury instruction number 11. Therefore, we must reverse and remand for retrial with respect to RCRA count 9 for the same reasons as given for the reversal and remand of RCRA counts 1 through 4. Consequently, we need not reach the additional arguments raised by the appellants with respect to this count.

## C. *CERCLA Counts 6 through 8*

■ Counts 6 through 8, of which only Junior Goodner was convicted, involve release of hazardous substances into the environment on certain dates without a permit in violation of 42 U.S.C. § 9603(b). Jury instruction number 16 properly identi-

fied as an element of the CERCLA counts "that the defendant knew of the release into the environment from the facility of a hazardous substance in an amount in excess of the reportable quantity." Instruction 17 defined "hazardous substances" under CERCLA.

### INSTRUCTION NUMBER 17

### CERCLA—DEFINITIONS

. . . .

The term "hazardous substance" is defined to include any hazardous waste listed under [RCRA]. Therefore, because it is listed as an F002 hazardous waste, the spent solvent methylene chloride, and spent solvents which contained more than ten percent methylene chloride before use are hazardous substances.

Appellants argue that this CERCLA instruction also references back to instruction 11, which defined hazardous waste under RCRA and which stated both that the waste may be a listed F002 hazardous waste and that the waste may be hazardous waste under the invalidated mixture rule. This CERCLA instruction defining hazardous substances, however, does more than refer back to the hazardous waste definition. It specifically identified the waste as a listed F002 hazardous waste and, consequently, eliminated any need for the jury to rely upon the mixture rule. We find that the invalidation of the mixture rule does not affect the convictions under CERCLA counts 6 through 8. With respect to these counts, therefore, appellant's other arguments must be addressed.

■ Junior Goodner argues that the paint waste was not a listed F002 hazardous waste within the definition in 40 C.F.R. § 261.31. The paint remover clearly falls within the definition of F002 waste because, before use, it was a solvent that contained 50% to 70% methylene chloride. Even some samples of the paint waste, containing the solvent after use, were found to have over the required 10% methylene chloride. Junior Goodner, however, distinguishes the paint remover from the paint waste and argues that the paint

waste is not a "spent solvent." In promulgating the rule listing certain spent solvents as F002 hazardous waste, the EPA noted that:

the spent solvent listings cover only those solvents that are used for their "solvent" properties—that is, to solubilize (dissolve) or mobilize other constituents.... A solvent is considered "spent" when it has been used and is no longer fit for use without being regenerated, reclaimed, or otherwise reprocessed. On the other hand, process wastes where solvents were used as reactants or ingredients in the formulation of commercial chemical products are not covered by the listing.

50 Fed.Reg. 53,315, 53,316 (1985). The paint waste contains paint remover that was used for its solvent properties and was not used for the formulation of a commercial product. It is considered "spent" because it cannot be reused unless it is reprocessed. Therefore, the paint remover in the paint waste is a spent solvent within the meaning of 40 C.F.R. § 261.31.

■ Junior Goodner next argues that insufficient proof existed to support a finding that he knowingly failed to notify authorities of a "release" from a "facility" into the "environment" within the meaning of the statute. The definition of environment includes "land surface ... or ambient air." 42 U.S.C. § 9601(8). The definition of release includes any "dumping or disposing" into the environment. 42 U.S.C. § 9601(22). The definition of facility includes "storage containers." 42 U.S.C. § 9601(9). Under the plain language of the statute, the uncontroverted evidence that the paint waste was dumped from the barrels onto the land falls within the statutory language.

■ Junior Goodner also argues that the jury instructions were faulty because they did not specify that the release of a reportable quantity of a hazardous substance must occur within a 24–hour period and that the indictment also suffered the same defect. The limitation that the release of a reportable quantity occurred in a 24–hour period is not within the language of the

statute, 42 U.S.C. § 9603(b), but is contained in an interpretative regulation, 40 C.F.R. § 302.6(a). If only the statutory language and not the regulatory language is included, the indictment is permissible, as long as the essential elements of the crime are set forth. *United States v. Crow,* 824 F.2d 761, 762 (9th Cir.1987). Even if the regulation narrowed the scope of the statute in this case, it was harmless error because the uncontroverted evidence demonstrated that a reportable quantity of the paint waste was dumped onto the Goodner Brothers Farm in an amount of time less than 24 hours.

▮ The final argument Junior Goodner raises with respect to the CERCLA counts is that the indictment was fatally flawed because it did not contain the term "facility." This contention has little merit because the definition of facility includes storage containers, and the barrels from which the paint waste was dumped constitute storage containers. Furthermore, the jury instructions included the term "facility" in defining the elements of the offense.

### D. *Acceptance of Responsibility*

▮ Junior Goodner contends that the district court erred in sentencing by refusing to reduce his offense level by two levels for acceptance of responsibility. This court gives great deference to the district court on review of this determination and will not reverse unless the district court's decision is without foundation. *United States v. Evidente,* 894 F.2d 1000, 1002 (8th Cir.), *cert. denied,* 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990). The district court did not abuse its discretion in refusing to grant Junior Goodner a reduction for acceptance of responsibility.

### E. *Motion to Strike*

Taken with the merits of this case, we consider the government's motion to strike various letters from the EPA that appellants included in their appendix. These letters are non-binding legal reference materials that were not relied upon by this court in this case. Therefore, we deny the government's motion to strike.

### III. Conclusion

We reverse the district court on counts 1 through 4 against Goodner Brothers Aircraft and on count 9 against both Goodner Brothers Aircraft and Junior Goodner and remand these counts for a new trial. We affirm the district court with respect to counts 6 through 8 against Junior Goodner. In addition, we deny the government's motion to strike.