UNITED STATES of America, Appellee,

v.

Dale Lynn RYAN, Appellant.

No. 92–1357.

United States Court of Appeals,
Eighth Circuit.

Submitted March 8, 1994.

Decided Oct. 31, 1994.

**362**

Richard J. Lazarus, St. Louis, MO, argued (F. Thomas Schornhorst, on the brief), for appellant.

Robert Dopf, Asst. U.S. Atty., Des Moines, IA, argued (Linda R. Reade, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, JOHN R. GIBSON, Senior Circuit Judge, McMILLIAN, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges, En Banc.*

WOLLMAN, Circuit Judge.

A divided panel of this court affirmed Dale Lynn Ryan's conviction of violating the federal arson statute, 18 U.S.C. § 844(i). *United States v. Ryan*, 9 F.3d 660 (8th Cir.1993). We granted rehearing en banc and vacated the panel opinion. Having considered the issue raised by the suggestion for rehearing en banc, we now affirm, and we reinstate the

* MURPHY, Circuit Judge, took no part in the

panel opinion as to the other issues raised in Ryan's initial appeal.

**I.**

We recount only those facts relevant to the issue remaining in this case, referring the reader to the panel opinion for the facts giving rise to the charge against Ryan.

In January 1989, Ryan began managing the Ryan Fun and Fitness Center (the Fitness Center), a business located in West Burlington, Iowa, and owned by Ryan's father, Ronald D. Ryan, a Kansas resident. On December 6, 1989, after an unsuccessful year, Ryan's father ordered the Fitness Center closed. Ryan and his father then began efforts to sell the business. Ryan took a photographic inventory of the interior and had a real estate agent inspect the property for purposes of conducting a market value analysis. Ryan also removed his personal property from the building on December 26 in anticipation of a quick sale.

On January 1, 1990, fire engulfed the Fitness Center. Two volunteer fire fighters died fighting the blaze. A jury convicted Ryan of violating the federal arson statute, 18 U.S.C. § 844(i), and the district court sentenced him to 328 months in prison. Ryan appealed, raising several issues. As set forth above, a divided panel of this court rejected all of Ryan's arguments and affirmed his conviction.

**II.**

Title 18, section 844(i) of the United States Code makes arson of any building or property used in interstate commerce or in any activity affecting interstate commerce a federal crime, providing:

Whoever maliciously damages or destroys ... by means of fire or an explosive, any building, vehicle, or other real or personal property *used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce* shall be imprisoned for not more than ten years or fined not more than $10,000, or both; ... and if death results to any person, including any

consideration or decision of this case.

public safety officer performing duties as a direct or proximate result of conduct prohibited by this· subsection, shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment as provided in section 34 of this title.

(emphasis added).

With respect to section 844(i)'s interstate commerce requirement, the district court gave the jury the following instruction:

"Interstate commerce" means trade, or business, or travel between the states. "Used in an activity affecting interstate commerce" means to affect in some way trade, or business, or travel between the states.

If you find from the evidence beyond a reasonable doubt that, on or about January 1, 1990, the Ryan Fun and Fitness Center building was owned by Ronald D. Ryan, a resident of Kansas, and leased by him to Ryan Air Services, Inc., a Kansas Corporation, then the required affect [sic] on interstate commerce has been proved; or if you find from the evidence beyond a reasonable doubt that on January 1, 1990, the Ryan Fun and Fitness Center building was supplied with natural gas used to heat the building, and such natural gas was supplied from outside of the state of Iowa, then the required affect [sic] on interstate commerce has been proved. If you do not so find, then the required affect [sic] on interstate commerce has not been proved and you must find the defendant not guilty.

Jury Instruction Number 10. Ryan argues that neither of the bases set forth in the instruction—the out-of-state ownership and lease agreement, and the supply of natural gas from an out-of-state source—satisfies section 844(i)'s interstate commerce nexus requirement.

Ryan did not object to this instruction at trial. Accordingly, we review the challenge to Instruction Number 10 under the plain error standard of review. Fed.R.Crim.Pro. 52(b); *United States v. Olano,* — U.S. —, —, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). Ryan argues, however, that plain error review is inapplicable because the in-

terstate commerce element of the offense also describes the basis for subject matter jurisdiction, which is not waivable and therefore may be raised at any stage of the proceeding.

Our cases have described the interstate commerce element of section 844(i) as constituting a jurisdictional predicate of the substantive offense. *United States v. Voss,* 787 F.2d 393, 396–97 (8th Cir.), *cert. denied,* 479 U.S. 888, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986) (substantive element of offense also confers jurisdiction); *see United States v. Mayberry,* 896 F.2d 1117, 1119–20 (8th Cir. 1990); *United States v. Hansen,* 755 F.2d 629, 630–31 (8th Cir.), *cert. denied,* 474 U.S. 834, 106 S.Ct. 105, 88 L.Ed.2d 85 (1985); *United States v. Michaels,* 726 F.2d 1307, 1309–10 (8th Cir.), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). *See generally United States v. Bryant,* 766 F.2d 370, 375 (8th Cir.1985) (noting that an interstate commerce nexus requirement "in criminal and civil statutes is most often for the purpose of conferring federal jurisdiction rather than of defining substantive elements of an offense"), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986). Other circuits also recognize this element of the crime of arson as the basis for jurisdiction under section 844(i). *See United States v. Turner,* 995 F.2d 1357, 1361–62 (6th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 282, 126 L.Ed.2d 232 (1993); *United States v. Medeiros,* 897 F.2d 13, 15–17 (1st Cir.1990); *United States v. Doby,* 872 F.2d 779, 780 (7th Cir.1989) (per curiam), *aff'g* 684 F.Supp. 558 (N.D.Ind.1988); *United States v. Shockley,* 741 F.2d 1306, 1307 (11th Cir.1984) (per curiam); *United States v. Grossman,* 608 F.2d 534, 535–37 (4th Cir.1979).

The district court had subject-matter jurisdiction in this case by virtue of the fact that Ryan was charged with an "offense against the United States." 18 U.S.C. § 3231. The interstate commerce aspect of this case arises merely as an element of the section 844(i) offense. If that element is not satisfied, then Ryan is not guilty; but the court is not by the failure of proof on that element deprived of judicial jurisdiction. Ryan could have raised the question whether Congress

had exceeded the power granted to it under the Commerce Clause—a question of legislative jurisdiction. Having not been raised, that constitutional question has no bearing on whether we have jurisdiction to proceed in this case.

## III.

■ In enacting section 844(i), Congress intended to exercise its full power under the Commerce Clause of the Constitution. *Russell v. United States*, 471 U.S. 858, 859 & n. 4, 105 S.Ct. 2455, 2456 & n. 4, 85 L.Ed.2d 829 (1985); *Mayberry*, 896 F.2d at 1119–20. The statute is intended to protect all business property. *Russell*, 471 U.S. at 862, 105 S.Ct. at 2457; *Mayberry*, 896 F.2d at 1120. Indeed, section 844(i) reaches arson of any property having even a *de minimis* connection to interstate commerce. *Mayberry*, 896 F.2d at 1120; *Voss*, 787 F.2d at 397. This standard is easily met, even when the property is temporarily closed or vacant. *Mayberry*, 896 F.2d at 1120; *United States v. Hermes*, 847 F.2d 493, 496 (8th Cir.1988) (per curiam).

In *Voss*, while acknowledging the *de minimis* standard as sufficient to satisfy the statute, we recognized that limits do exist on the reach of section 844(i). 787 F.2d at 397–400. Although we held in *Voss* that the purchase of out-of-state insurance standing alone was insufficient, we recognized that there were additional facts in the record sufficient to satisfy the *Russell* standard under a proper jury instruction. *Id.* at 398.

Our subsequent cases have continued to acknowledge the expansive scope of section 844(i). Thus, we have held that section 844(i) extends to temporarily closed businesses. In *Mayberry*, we found that section 844(i) was applicable to a building containing a sawmill that had been out of operation for a month because of a lack of logs to cut. 896 F.2d at 1120. We noted that at the time of the fire the mill would have been operational had there been logs available to cut, that the mill still received electricity, and that there was an ongoing lease between the owner of the premises and the operator of the sawmill. *Id.* at 1119. All things considered, the sawmill still affected, and could affect, interstate commerce. Likewise in the present case, had there been a sufficient number of clients to serve at the Fitness Center, they could readily have been served in keeping with the nature of the property.

In *Hermes*, we found that an unleased commercial building was within the scope of section 844(i). 847 F.2d at 496. We noted that the owner of the property had advertised its availability for use and that the property was in fact available for commercial use. *Id.* We further stated that the fact that the building was not "occupied by a tenant does not detract from its character as commercial property." *Id.* The emphasis on the character of the property warrants note because it acknowledges the importance of the broader commercial market. As was true of the property in *Hermes*, the Fitness Center constituted property having an available use and thus was suited for the broader commercial market and perforce fell within the broad scope of 844(i).

In *United States v. Shriver*, we found that a temporarily closed nightclub being rehabilitated at the time of the arson was property used in an activity affecting interstate commerce. We noted that a "successful reopening would return the establishment to the market place." 838 F.2d 980, 983 (8th Cir. 1988).

Our broad interpretation of section 844(i) is fully in accord with that of other circuits. In *Turner*, the Sixth Circuit, in upholding a conviction for arson of vacant rental property, stated that "property routinely used in interstate commerce activity does not lose its interstate characteristics because of a temporary cessation of that activity." 995 F.2d at 1362. Likewise, in *Medeiros*, the First Circuit found ample precedent for the proposition "that strictly contemporaneous connections [are] not required to meet the interstate commerce requirement." 897 F.2d at 17; *see also Doby*, 872 F.2d at 780 (vacant home with advertised rental unit maintained sufficient nexus); *Shockley*, 741 F.2d at 1307 (building closed for repairs retained its interstate character); *Grossman*, 608 F.2d at 536–37 (rejecting argument that "844(i) requires a contemporaneous connection with

interstate commerce without regard to" other considerations). *Cf. United States v. Patterson*, 792 F.2d 531, 533–34 (5th Cir.) (finding partially completed condominium units " 'used' within the meaning of" section 844(i)), *cert. denied,* 479 U.S. 865, 107 S.Ct. 220, 93 L.Ed.2d 149 (1986).

 Prior to its closing, the Fitness Center was business property with firmly established connections to interstate commerce. We find pervasive evidence in the record that the Fitness Center maintained a sufficient post-closing nexus with interstate commerce to bring it within the reach of the statute. The property was commercial in nature, and the totality of circumstances indicates that it was embraced by the recognized meaning and intent of section 844(i) despite a cessation of its operation as the Fitness Center.

There is manifold evidence that the Fitness Center was about to be placed on the market for sale. Both Ryan and his father detailed their discussions with real estate agents, the elder Ryan testifying that the property, while not formally listed, was "verbally listed" in an attempt to sell it quickly before winter ended. Ronald Ryan, VI. Tr. at 171, 157. Additional preparations for cleaning the facility and Ryan's removal of his personal property further indicate the marketable nature of the property and its potential for ready reentrance as a functioning business in the commercial marketplace.

We need not rely solely on the preparations for the sale of the property, because there is ample other evidence of a connection to interstate commerce. The short duration of the closure, receipt of utility services for much of the month and continued receipt of natural gas, Ryan's continued presence on his father's payroll as manager of the Fitness Center through January 28, 1990, and the lease arrangement itself all lead to the conclusion that the Fitness Center was an instrumentality of interstate commerce for purposes of satisfying the requirements of section 844(i).

The Fitness Center was business property that the broader commercial market continued to embrace despite its inefficiencies with respect to the particular purpose for which it was operated. The market fully expected it to become productive again. Neither the building itself nor its commercial nature had been abandoned. *See Hermes,* 847 F.2d at 496 (vacant rental property still retains commercial character); *Shockley,* 741 F.2d at 1307 (closed restaurant retained its "interstate character"). In short, the Fitness Center was the type of property that Congress intended to include within the ambit of section 844(i).

Ryan raises the concern that to uphold the application of section 844(i) in this case would *de facto* federalize all arson cases. This concern is misplaced. Our interpretation of section 844(i) need not, and does not, go so far as those cases that have found the receipt of electricity or natural gas by a purely private residence to constitute a connection with interstate commerce sufficient to satisfy the requirements of section 844(i). *See United States v. Ramey,* 24 F.3d 602 (4th Cir.1994); *United States v. Stillwell,* 900 F.2d 1104 (7th Cir.), *cert. denied,* 498 U.S. 838, 111 S.Ct. 111, 112 L.Ed.2d 81 (1990). Suffice it to say that all of the circumstances of this case, when viewed in the light of the Court's holding in *Russell* and of our prior decisions regarding temporarily closed commercial property, lead to the conclusion that the Fitness Center was covered by the broad reach of section 844(i).

## IV.

### A. *Jury Instruction on Required Interstate Commerce Nexus*

 Satisfied that a sufficient factual basis existed to warrant the application of section 844(i), we must determine if the jury instructions sufficiently defined the interstate commerce nexus required to fit the definition of the crime. Jury verdicts are not supportable when based on instructions that do not require the proper finding of facts to support each element of the crime. *Voss,* 787 F.2d at 398; *see Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Additionally, a verdict based on jury instructions that provided alternative bases for a finding, one of which is legally inadequate, is presumed to have rested on the insufficient basis. *See Griffin v. United States,* 502 U.S.

46, ——, 112 S.Ct. 466, 474, 116 L.Ed.2d 371 (1991); *United States v. Goodner Bros. Aircraft, Inc.,* 966 F.2d 380, 384 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 967, 122 L.Ed.2d 123 (1993); *see also United States v. Wilkinson,* 26 F.3d 623, 625 (6th Cir.1994) (jury instructions inaccurately defining elements of offense may rise to level of plain error).

■ Each of the bases set out in Instruction Number 10 must be reviewed for prejudicial error. Our analysis of the challenged instruction is distinguished from that employed in *Voss.* We analyze properly objected to jury instructions under the harmless error standard of Federal Rule of Criminal Procedure 52(a). *See Voss,* 787 F.2d at 398. Because Instruction Number 10 was not objected to at trial, however, we analyze its validity in terms of plain error in accordance with Federal Rule of Criminal Procedure 52(b). *United States v. Young,* 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985); *see United States v. Bettelyoun,* 16 F.3d 850, 852 (8th Cir.1994) (reviewing jury instruction for plain error).

■ Plain error review involves a three-step analysis: (1) the district court must have committed an error, (2) that error must be plain, i.e., it must be clear under current law, and (3) the error must affect the defendant's substantial rights. *Olano,* —— U.S. at ——–——, 113 S.Ct. at 1776–78; *United States v. Montanye,* 996 F.2d 190, 192 (8th Cir.1993) (en banc). We recently summarized the plain error rule as follows:

> The plain error standard affords a court of appeals the discretion to provide a remedy for an aggrieved defendant who demonstrates that there was an error, which is a deviation from an unwaived legal rule; the error was plain, meaning clear or obvious; and the error affected the defendant's substantial rights, which requires a showing that the error was prejudicial and affected the trial's outcome.

*United States v. Johnson,* 12 F.3d 827, 835 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 1860, 128 L.Ed.2d 482 (1994).

■ If a forfeited error meets the foregoing requirements, we have discretionary authority to order its correction. *Olano,* —— U.S. at ——, 113 S.Ct. at 1778; *Johnson,* 12 F.3d at 835; *Montanye,* 996 F.2d at 192. We should exercise that discretion when the error results in a miscarriage of justice or "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Olano,* —— U.S. at ——, 113 S.Ct. at 1779 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)); *Montanye,* 996 F.2d at 192.

■ The burden of proving plain error is on the party asserting it. *See, e.g., United States v. Jennings,* 12 F.3d 836, 838–39 (8th Cir.1994); *United States v. Ragan,* 952 F.2d 1049, 1049 (8th Cir.1992). We conclude that Ryan has failed to show that any error in the district court's instruction "is clear under current law." *Olano,* —— U.S. at ——, 113 S.Ct. at 1777.

To properly determine whether any error is clear under current law, we must refer to our earlier overview of the required interstate commerce nexus under section 844(i). It is clear that an instruction could have been formulated and presented under these facts sufficient to allow a proper jury finding of the requisite interstate nexus. It is not so clear, however, that the instruction actually given was a plainly impermissible broadening of 844(i)'s scope.

Instruction Number 10 states that if the jury found that the Fitness Center building was owned by Ronald Ryan, a Kansas resident, and leased by him to Ryan Air Services, Inc., a Kansas corporation, then the required effect on interstate commerce had been proved. Although we have never held out-of-state ownership sufficient on its own terms to satisfy the elements of section 844(i), that status, coupled with the lease arrangement, is not a plainly inaccurate showing of sufficient ties to interstate commerce. *Russell* itself characterized a purely local lease as part of a broader commercial market. 471 U.S. at 862, 105 S.Ct. at 2457. The Ryan lease, although transacted through a corporate shell, indicates the marketable nature of the property. Additionally, Ryan's father manifested his ownership status through the exercise of direct, final control over the property in a necessarily interstate

manner. In light of how broadly the *Russell* Court, our decisions, and other circuits have construed section 844(i), we cannot find that this portion of the instruction constituted plain error.

The instruction alternatively states that a finding that the Fitness Center was supplied with natural gas from outside Iowa sufficiently established the required effect on interstate commerce. We have not ruled on whether receiving out-of-state natural gas by itself satisfies section 844(i)'s interstate commerce requirement. In *Hansen*, we indicated that reliance on the use of electricity transported through interstate commerce to confer jurisdiction "would seem to stretch the notion of interstate commerce beyond the limits of logic." 755 F.2d at 631 n. 4. *Hansen*, however, was decided before the *Russell* Court's recognition of the sweeping jurisdictional scope of the statute.

Although we find it unnecessary to determine whether the receipt and use of natural gas or electricity transported in interstate commerce is alone sufficient to satisfy the requirements of section 844(i), we note, without expressing any agreement with those decisions, that two of our sister circuits, relying on *Russell*, have gone beyond even the challenged instruction's approach. In *Stillwell*, the Seventh Circuit held that section 844(i)'s reach extends to private residences whose only nexus with interstate commerce is the receipt of natural gas transported by an interstate pipeline. 900 F.2d at 1107–10. More recently, in *Ramey*, the Fourth Circuit found that the receipt by a private residence of electricity furnished through an interstate power grid satisfied the statute's interstate commerce requirement. 24 F.3d at 607.

Putting aside *Ramey*, which was not decided until after Ryan had been tried and convicted, and *Stillwell*, Ryan has still failed to meet his burden of proving clear error under our applicable circuit case law regarding the application of section 844(i) to temporarily closed commercial properties. We cannot say that an unobjected-to instruction on the sufficiency of the receipt of natural gas by a temporarily closed commercial entity constitutes remediable plain error. Accordingly, "[b]ecause the district court did not violate our current cases . . ., the first two limitations on our appellate authority under Rule 52(b) are not overcome." *Montanye*, 996 F.2d at 193.

### B. *Jury Instruction Regarding Proximate Cause*

■ Although we granted rehearing solely on the basis of the interstate commerce nexus issue, Ryan also raised by way of a footnote in his brief a challenge to Jury Instruction Number 13, which set out the causal elements necessary for the jury to hold Ryan responsible for the deaths of the fire fighters. Section 844(i) provides that the deaths must be the "direct or proximate result of" the arson. With respect to the proximate cause requirement, the district court gave the following instruction:

> The deaths of William Klein and Joseph Wilt resulted from defendant's conduct of setting the fire if his conduct was a proximate cause of their deaths. Defendant's conduct was a "proximate cause" of their deaths if it was a substantial factor in causing them to die on January 1, 1990, and they would not have died then except for defendant's conduct.
>
> "Substantial" means that defendant's conduct has such an effect in producing the deaths as to lead a reasonable person to regard his conduct as a cause of the deaths.
>
> An event, such as the deaths of William Klein and Joseph Wilt, may have more than one proximate cause. The government need not prove that defendant's conduct was the only proximate cause of their deaths; it needs to prove only that defendant's conduct was a proximate cause of their deaths.

Jury Instruction Number 13. Ryan challenges this Instruction as denying the jury an opportunity to determine whether the necessary element of reasonable foreseeability was met. We conclude, however, that the legal principle of proximate cause embodied in section 844(i) was adequately presented to the jury. The panel decision appropriately disposed of this matter, and we reinstate the panel opinion on this issue as well.

The judgment of conviction is affirmed.

MORRIS SHEPPARD ARNOLD, Circuit Judge, concurring in the judgment.

I concur in the judgment in this case because I do not believe that the district court's error, if any, was plain, since the defendant has not demonstrated that it "affected the outcome of the District Court proceedings." *United States v. Olano*, ⸺ U.S. ⸺, ⸺, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993).

I write separately simply to express my regret that the court passes up an opportunity explicitly to overrule those cases of ours that hold (or say) that the statutory requirement of an interstate commerce nexus in cases like this goes to the jurisdiction of the federal courts. It does not. A connection to interstate commerce is merely an element of the statutory offense, and, if proof of it is missing, the defendant is entitled to an acquittal. But the federal courts had statutory jurisdiction in the first place to try the case because the government charged the defendant with a federal crime, and they do not lose jurisdiction because of a failure of proof. A failure to prove the interstate commerce element no more deprives us (or the district court) of jurisdiction than would a failure to prove that a building was burned down. Both these facts are merely elements of the crime; neither is jurisdictional. The court seems to recognize this legal proposition at one point in its opinion, yet it also cites cases standing for the opposite proposition without overruling them. Since I see the present configuration of the opinion as internally inconsistent, I respectfully dissent from so much of it as implies the continued validity of the idea that an interstate commerce nexus has jurisdictional significance in cases like the present one.

RICHARD S. ARNOLD, Chief Judge, with whom McMILLIAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and MAGILL, Circuit Judge, join, concurring in the judgment in part and dissenting in part.

The appellant, Dale Ryan, advances three arguments as possible bases for reversal of his conviction in his petition for rehearing en banc. Each argument derives from his assertion that Jury Instructions 10 and 13 are a misstatement of the law under 18 U.S.C. § 844(i). First, he argues that instruction 10 was inadequate to establish subject-matter jurisdiction. In a related argument, he contends that the District Court failed to instruct the jury properly on an essential element of section 844(i). Finally, he suggests that Instruction 13 failed to present properly the issue of reasonable foreseeability to the jury. I agree with the result reached by the Court with regard to arguments one and three presented by the appellant. However, with respect to argument two, I am compelled to dissent from the Court's conclusion that the instruction was not plain error. In all other respects, I concur in the decision to reinstate the panel opinion.

When conducting a plain-error review, this Court is guided by Federal Rule of Criminal Procedure 52(b): "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the [district] court." A Rule 52(b) review requires: 1) actual error; 2) plain under current law; 3) that affects substantial rights. *United States v. Olano*, ⸺ U.S. ⸺, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

Jury Instruction 10 stated in part:

"Interstate commerce" means trade, or business, or travel between the states. "Used in an activity affecting interstate commerce" means to affect in some way trade, or business, or travel between the states.

If you find from the evidence beyond a reasonable doubt that, on or about January 1, 1990, the Ryan Fun and Fitness Center building was owned by Ronald D. Ryan, a resident of Kansas, and leased by him to Ryan Air Services, Inc., a Kansas Corporation, then the required effect on interstate commerce has been proved; or if you find from the evidence beyond a reasonable doubt that on January 1, 1990, the Ryan Fun and Fitness Center building was supplied with natural gas used to heat the building, and such natural gas was supplied from outside of the state of Iowa, then the required effect on interstate commerce has been proved. If you do not so find, then the required effect on interstate

commerce has not been proved and you must find the defendant not guilty.

I have already explained why I consider the instruction incorrect. *United States v. Ryan*, 9 F.3d 660, 675–76 (8th Cir.1993) (dissenting opinion). Interestingly, the panel did not mention the fact that trial counsel (not the same lawyers as those now representing Ryan) did not object to the instruction. The panel opinion simply addresses the instruction on the merits and upholds it. *Id.* at 665–67. It says nothing about "plain error." This represents, I suppose, that the panel was holding, *sub silentio*, both that the error, if there were one, would be "plain," and that, in that event, we should exercise our discretion to reach it. It seems extraordinary to me that the Court en banc now shrinks from deciding the merits. The panel opinion decided the issue on the merits in such a way as to cause a majority of the Court to rehear the case en banc. The Court en banc now decides the case on the basis of a procedural default that was argued to the panel but necessarily excused by the manner of the panel's disposition.

Under our practice, however, the order granting the suggestion for rehearing en banc automatically vacates the panel opinion. So we now write on a clean slate, and I concede that the Court en banc has power to adopt a position that the panel seemingly rejected, even though by doing so it arguably wastes on a procedural discussion the scarce resource of an en banc proceeding, a proceeding initiated in the first place with the thought of deciding on the merits an important question of statutory construction affecting the boundary between federal and state criminal prosecutions. At least the en banc Court is not approving the instruction that was given, and I take some comfort in that.

I will not repeat here my reasons for believing an error occurred. The question is whether the error was "plain," in the sense of clear or obvious. I believe this is true with respect to both "prongs" (forgive the cliché) of the instruction, and, as the Court notes, *ante* at 365–66, if either suggested basis of interstate nexus was wrong, the conviction is infirm.

First, as to the ownership of the building by a Kansas resident and its being leased to a Kansas corporation: As the Court says, *ante* at 366, "we have never held out-of-state ownership sufficient on its own terms to confer jurisdiction...." On the contrary, we have held virtually the opposite. In *United States v. Voss*, 787 F.2d 393, 396–98 (8th Cir.), *cert. denied*, 479 U.S. 888, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986), we held that a building's being insured by an out-of-state company was not sufficient to bring it within the statute. The interstate financial effect of out-of-state ownership and that of out-of-state insurance coverage seem indistinguishable to me. That the Kansas owner, for business purposes of his own, leased the property to his controlled Kansas corporation adds nothing. Of course the property is marketable. The owner can lease it to himself. He can also sell it to someone else. All property will sell at some price.

What the Court fails to take into account, I think, is the phrasing of the statute. It refers not to a building whose destruction will affect interstate commerce, but to the destruction of a "building used ... in ... any activity affecting interstate ... commerce...." Under the jury instruction in question, what is the "activity" that the jury must find? Being owned? Every building is owned by someone, though every building is not insured. *Russell v. United States*, 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985), on which the Court relies, was decided *before* our *Voss* decision, and *Voss* discusses *Russell*. *Russell*, in any event, continues to stress that the statute "[b]y its terms ... *only applies* to property that is '*used*' in an '*activity*' that affects [interstate] commerce." 471 U.S. at 862, 105 S.Ct. at 2457 (emphasis added). The building in *Russell* was being rented to apartment dwellers at the time of the fire. The building here was just cumbering the ground. *Cf.* Luke 13:7 (King James). It was not being "used" in any "activity."

The instruction also permitted conviction upon a finding that the building was being supplied with out-of-state natural gas. Is being connected to a gas line an "activity"? We indicated to the contrary in *United States v. Hansen*, 755 F.2d 629, 631 n. 4 (8th

Cir.), *cert. denied,* 474 U.S. 834, 106 S.Ct. 105, 88 L.Ed.2d 85 (1985) (electricity). It is true that *Russell* was decided after *Hansen* (by four months), but the point is that there must be an *activity* affecting interstate commerce. Here there is none. I find somewhat disturbing the Court's attempt to bolster its holding by citing cases from other circuits (one of which, *United States v. Stillwell,* 900 F.2d 1104 (7th Cir.), *cert. denied,* 498 U.S. 838, 111 S.Ct. 111, 112 L.Ed.2d 81 (1990), was actually *disapproved* by the panel in this case, 9 F.3d at 667). The district courts are obligated to follow our cases, not divergent authorities from other circuits. It is "our current cases" that we look to in plain-error analysis. *United States v. Montanye,* 996 F.2d 190, 193 (8th Cir.1993) (en banc).

So I think there was plain error here. The next stage of the inquiry is whether the error affected Ryan's substantial rights. A defendant's substantial rights are affected when prejudice is shown. The defendant "bears the burden of persuasion with respect to prejudice." *Olano,* —— U.S. at ——, 113 S.Ct. at 1778. Thus, "in most cases," a defendant must demonstrate that the error was prejudicial in that it "affected the outcome of the District Court proceedings." *Ibid.* Here, the instruction was erroneous with regard to an essential element of the crime. Had the jury been properly instructed in this case, it could have reached a different conclusion. Consequently, the judicial proceeding was compromised, and Ryan was unavoidably prejudiced.

I discuss briefly the final step in plain-error analysis. Even when there is "plain error," we still have discretion whether to decide the point. Several reasons convince me we should exercise this discretion affirmatively. Ryan is in jail for life. He has an obvious ineffective-assistance-of-counsel claim (failure to object to instruction 10) which will be raised in the inevitable Section 2255 motion. Such a claim is, to say the least, not insubstantial. Why not go ahead and decide it now, and save the District Court and ourselves the trouble of enduring a collateral proceeding? And finally, the issue is one of great public importance, transcending this particular case: How far did Congress intend to go in taking over for the federal government an area of criminal justice customarily handled by the States?

I respectfully dissent in part.

LOKEN, Circuit Judge, concurring in part and dissenting in part.

I agree with Chief Judge Arnold that the district court committed plain error in the supplied-with-natural-gas portion of its Jury Instruction 10, that that error affected Ryan's substantial rights, and that we should exercise our discretion to decide this issue on the merits. To that extent, I respectfully dissent in part. In all other respects, I concur in the opinion of the Court.